FILED
United States Court of Appeals
Tenth Circuit

June 28, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JULIA MONIQUE FRIAS,

    Defendant - Appellant.

No. 17-1242

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:14-CR-00502-RM-1)**
_____

John Arceci, Assistant Federal Public Defender (and Virginia L. Grady, Federal Public Defender, on the briefs), Denver, Colorado, for Defendant – Appellant.

James Murphy, Assistant United States Attorney (and Robert C. Troyer, United States Attorney, on the brief), Denver, Colorado, for Plaintiff – Appellee.
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant-Appellant Julia Frias was convicted by a jury of being a felon in possession of a firearm or ammunition, 18 U.S.C. § 922(g)(1), and sentenced to 45 months' imprisonment and three years' supervised release, consecutive to a state sentence. On appeal, Ms. Frias contends that she was denied her constitutional right to a

speedy trial and that the district court abused its discretion in instructing the jury on the government's burden of proof and responding to a jury inquiry. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

On October 13, 2014, Ms. Frias was arrested by the Denver police on a warrant in connection with a murder. Officers located Ms. Frias at her residence and observed her driving away in a vehicle. The officers attempted to block the vehicle's path, but when this failed, a four-minute chase ensued. The chase concluded when her vehicle crashed into a fence after being hit by an officer's vehicle. Ms. Frias was arrested when she ran out of her vehicle. Although officers claimed not to have seen another passenger, a friend of Ms. Frias, Melinda Tafoya, testified that she was in Ms. Frias's vehicle during the chase. According to Ms. Tafoya, she went unnoticed by the officers because she slipped out of the vehicle and over a fence while the officers grabbed Ms. Frias.

The officers later noticed a revolver on the passenger side floorboard of Ms. Frias's vehicle in addition to two purses. One of the purses contained items belonging to Ms. Frias and bullets that fit the revolver. Ms. Frias was arrested for vehicular eluding, possession of a controlled substance, and possession of a weapon, and she was placed in the Denver County Jail.

On December 15, 2014, while still in state custody, Ms. Frias was indicted by a federal grand jury for being a felon in possession of a firearm. At this point, Ms. Frias was not aware of the federal indictment, which was sealed pending her federal court

2

appearance. Thereafter, she was transferred from the Denver County Jail to the custody of Jefferson County, where she was charged with first degree murder and conspiracy to commit first degree murder. Ms. Frias cooperated with state authorities and testified against her state codefendants, and on September 24, 2015, she pled guilty to one count of accessory to murder. See Colo. Rev. Stat. § 18-8-105(4). Her plea agreement provided that her state sentence should run concurrently with any "potential fed[eral] indictment stemming from [her] arrest in Denver." 1 R. 35. It also stated that the district attorney would "agree to reconsider if other jurisdictions impose[d] [a] consecutive sentence to this case." Id. at 36.[1] The state court imposed a four-year sentence.

On December 19, 2016, two years after the federal indictment and nine months after her state-court sentencing, the federal government took custody of Ms. Frias and she made her initial court appearance. Ms. Frias filed a motion to dismiss the federal indictment, arguing that the delay violated her Sixth Amendment right to a speedy trial. The district court held a hearing on the motion on February 3, 2017. Although the court found three of the four factors under Barker v. Wingo, 407 U.S. 514 (1972), weighed in favor of a constitutional violation, it denied the motion to dismiss because it found a lack of prejudice. Prior to and during trial, Ms. Frias filed renewed motions to dismiss for substantially the same reasons, contending that a witness to the events, Ms. Tafoya, did not remember certain details of the incident because of the delay. After hearing Ms. Tafoya testify at trial, the district court again denied the motion for lack of prejudice.

---

[1] This was due to a unique Colorado rule that allows for reconsideration of a sentence within 18 weeks of sentencing. See Colo. R. Crim. P. 35(b).

During the trial, the only important and contested factual issue was whether Ms. Frias possessed the firearm or ammunition found in her vehicle. During deliberations, the jury asked whether a defendant's knowledge of the gun and ammunition were sufficient to violate § 922. The court answered by referring the jury back to the original instructions, which contained the correct guidance. The jury ultimately found Ms. Frias guilty.

Ms. Frias now appeals. She contends that (1) her constitutional right to a speedy trial was violated, (2) the district court abused its discretion in failing to adequately respond to the jury's question during deliberations, and (3) the district court abused its discretion in instructing the jury on the government's burden of proof.

## Discussion

### I.  Constitutional Right to a Speedy Trial

Ms. Frias contends that the delay in bringing her to federal court violated her Sixth Amendment right to a speedy trial. We review the legal question of whether there was a Sixth Amendment violation de novo and any underlying district court factual findings for clear error. United States v. Black, 830 F.3d 1099, 1111 (10th Cir. 2016). The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first." Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004).

4

In Barker, the Supreme Court provided a framework for analyzing Sixth Amendment speedy trial claims. Barker listed four factors courts must balance: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of the right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. 407 U.S. at 530. The Court stated that these factors "must be considered together with such other circumstances as may be relevant" and that no single factor is determinative. Id. at 530–33. The district court in the instant case held that, although the first three factors favored Ms. Frias, the delay did not prejudice her. It thus found no violation of Ms. Frias's Sixth Amendment rights. We find no legal error in the district court's ruling.

### a. Length of Delay

The first factor, length of the delay, typically serves as a gatekeeper. We examine the other factors only when the delay is presumptively prejudicial, satisfied by "[d]elays approaching one year." United States v. Batie, 433 F.3d 1287, 1290 (10th Cir. 2006). The government concedes that the delay here triggers the other factors. Aplee. Br. at 10–11. We therefore proceed to the remaining three factors.

### b. Reasons for the Delay

It is the government's burden to establish an acceptable reason for its delay. Jackson, 390 F.3d at 1261. "Purposeful delay or delay to gain advantage weighs heavily against the government, while '[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily.'" United States v. Gould, 672 F.3d 930, 937 (10th Cir. 2012) (alterations in original) (quoting Barker, 407 U.S. at 531). The government argues its delay was intentional, but not in bad faith, with the objective that

5

the state prosecution could efficiently prosecute the individuals in the state murder case. The district court found that the government's initial delay in deferring to the state murder prosecution was warranted, but the nine month delay after the state sentence was imposed was not. We agree.

This court has held that "[a]waiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean it is a justifiable excuse in every case. Rather, it is the government's burden to explain why such a wait was necessary in a particular case." United States v. Seltzer, 595 F.3d 1170, 1175 (10th Cir. 2010). The government has failed to provide sufficient justification for the nine month delay following Ms. Frias's state sentencing. Therefore, this factor favors her.

### c. Assertion of Speedy Trial Rights

The third factor considers whether the defendant asserted her right to a speedy trial. Barker, 407 U.S. at 531. Ms. Frias contends that because she did not learn about the indictment until after she was taken into federal custody, this factor could only favor her. She maintains that the government never provided her the opportunity to assert her speedy trial rights. The government argues that Ms. Frias knew the federal charge was "looming out there" because counsel in the state criminal matter conversed with an AUSA while state proceedings were pending. Ms. Frias has the better of the argument — even if she had general knowledge that charges were looming, the government never actually made her aware that charges existed. It is doubtful that she could assert her

speedy trial rights on such a slender reed. As a result, this factor slightly favors Ms. Frias.

### d. Prejudice to the Defendant

The last factor is whether the delay prejudiced Ms. Frias. "[A] showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, [but] we have great reluctance to find a speedy trial deprivation where there is no prejudice." Gould, 672 F.3d at 939 (quoting Perez v. Sullivan, 793 F.2d 249, 256 (10th Cir. 1986). The Supreme Court has identified three interests to guide courts' inquiries concerning prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. The Court noted that the last interest — the ability of the defendant to prepare her defense — is the most important. Id. The district court found that the delay did not prejudice Ms. Frias because she failed "to explain the impact of anything on the presented defense or on an alternative defense." 1. R. 122. We agree.

On the first interest, there was no oppressive pretrial incarceration because Ms. Frias still would have been in custody on the state murder charge and thereafter when she was sentenced by the state court. See 6 R. 126–28. As to the second interest, anxiety and concern of the accused, this also favors the government. Under our precedent, Ms. Frias must show some "some special harm which distinguishes [her] case." United States v. Hicks, 779 F.3d 1163, 1169 (10th Cir. 2015) (quoting Gould, 672 F.3d at 939). This harm must be different than "any other arrestee awaiting trial." United States v. Dirden,

7

38 F.3d 1131, 1138 (10th Cir. 1994). Ms. Frias fails to identify such harm, so this interest also weighs in favor of the government.

The final interest is the most important: whether the delay impaired Ms. Frias's defense. On this interest, we have held that a defendant should show "that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses." Hicks, 779 F.3d at 1169. We find that this interest also favors the government.

Ms. Frias first contends that the delay affected the reliability of Ms. Tafoya's recollection of events. Ms. Frias maintains that Ms. Tafoya, her only witness, did not remember seeing the purses or a gun in the car on the day in question. However, Ms. Frias's counsel never asked Ms. Tafoya any relevant questions at trial to inquire whether Ms. Tafoya's memory was truly impaired, let alone on a material issue. In Barker, in finding against a speedy trial violation, the Court stated that "[t]he trial transcript indicates only two very minor lapses of memory . . . which were in no way significant to the outcome." 407 U.S. at 534. In this case, the same conclusion is warranted. Nothing in the trial transcript indicates that Ms. Tafoya lacked memory as to the pertinent facts — she was not asked about the gun or purses, and no proffer was offered to procure such testimony outside the jury. In fact, the transcript shows the opposite: her memory was clear as to the events of that day. See 5 R. 234–46.[2]

---

[2] Following trial, however, in a supplemental renewed motion to dismiss, Ms. Frias attached the sworn statement of an investigator stating many additional matters that Ms. Tafoya does not now remember. Yet, these matters do not necessarily demonstrate an impairment of the defense, and they contradict Ms. Tafoya's seemingly clear memory at trial. More importantly, counsel did not inquire about these particular matters at trial through Ms. Tafoya's testimony or through a proffer.

Ms. Frias also argues that her defense was impaired because the delay prevented her from receiving counsel closer in time to the charged offense. Ms. Frias is correct that in United States v. Seltzer, 595 F.3d 1170, 1180 (10th Cir. 2010), this court found that when a defendant went six months without counsel, the delay may suggest prejudice. However, Ms. Frias's case is different because she is not able to establish how additional time with counsel would have changed her defense. See id.;[3] Jackson, 390 F.3d at 1264 (stating that "the mere 'possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated'" (alterations in original) (quoting United States v. Loud Hawk, 474 U.S. 302, 315 (1986))).

Finally, Ms. Frias makes two additional points concerning prejudice. First, she contends that she was prejudiced from the delay because she missed her 18-week window to ask the Colorado state court to modify or reduce her state sentence so as to mitigate the effect of a consecutive federal sentence and effectuate the state court's intent of a concurrent sentence. See Colo. R. Crim. P. 35(b); Aplt. Br. at 35. Although true, this argument misses the mark. While courts have held that an accused has a general interest in being tried promptly, see Strunk v. United States, 412 U.S. 434, 437, 439 (1973), they have not held that a federal proceeding must proceed promptly so that a state court can potentially modify a sentence. Ms. Frias also reminds us that she lost out on an earlier

---

[3] In Seltzer, the court found that the defendant established an "impairment of his ability to defend and prepare his case." 595 F.3d at 1180. "During the time [Mr. Seltzer] was denied his right to counsel, the government appeared ex parte before the magistrate judge." Id. Moreover, Mr. Seltzer's alleged accomplice was promptly brought to court and cooperated against him — an opportunity that Mr. Seltzer was never afforded because of the delay. Id. at 1174.

opportunity for parole in the state case because she was in federal custody awaiting sentencing in this case. See Moore v. Arizona, 414 U.S. 25, 27 (1973). But given the resolution in the federal case, we see little, if any, prejudice.

Second, Ms. Frias argues that the delay affected the start of her statutory speedy trial clock. See Seltzer, 595 F.3d at 1180. But as the district court observed, a wait to assert such a right is implicit in any delay and therefore fails to establish the requisite prejudice necessary to trigger a constitutional violation, especially when Ms. Frias (unlike the defendant in Seltzer) has shown no lost opportunities from the delay.

### e. Balancing the Speedy Trial Factors

"Speedy trial claims require applying a balancing test." Jackson, 390 F.3d at 1266. None of the four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Batie, 433 F.3d at 1290 (quoting Barker, 407 U.S. at 533). However, we are generally reluctant to find a speedy trial violation without prejudice. See Gould, 672 F.3d at 939 ("[F]ailure to show prejudice is nearly fatal to a speedy trial claim.").

Although the first three factors slightly favor Ms. Frias, the most important factor, prejudice, does not. Ms. Frias fails to point to trial evidence suggesting that Ms. Tafoya did not recall relevant facts because of the delay. Nor did she provide any other evidence that her defense was prejudiced because of loss of evidence, a witness no longer available, or lack of memory of other witnesses. Accordingly, after balancing the factors, we agree with the district court that that there was no constitutional violation.

10

## II.   Jury Question

Ms. Frias next contends that the district court abused its discretion in failing to accurately respond to a jury question. This court reviews the district court's decision for an abuse of discretion. See United States v. Taylor, 828 F.2d 630, 634–35 (10th Cir. 1987). Here, the jury asked whether Ms. Frias would violate § 922(g)(1) if she only had knowledge that the firearm or ammunition were in the vehicle. The court responded: "The elements of a violation of 18 U.S.C. § 922(g)(1) are as set forth in Instruction No. 20. Please refer to that instruction along with all other definitional instructions." 1 R. 85.

Ms. Frias argues that the court provided an incorrect answer based on United States v. Little, 829 F.3d 1177 (10th Cir. 2016). There, the court stated that constructive possession exists "when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." Id. at 1182. Under this precedent, Ms. Frias argues the district court abused its discretion by not responding "No" to the jury's question. We disagree. Although answering "No" would not have been an abuse of discretion, neither was the district court's decision to refer the jury back to the instructions.

For one, a district court abuses its discretion only when its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting United States v. Byrne, 171 F.3d 1231, 1235–36 (10th Cir. 1999)). Unlike the cases cited by Ms. Frias, the jury instructions did not include a deficient or misleading instruction. See, e.g., United States v. Duran, 133 F.3d 1324, 1334 (10th Cir. 1998); United States v. Zimmerman, 943 F.2d 1204, 1213 (10th

11

Cir. 1991). This court considers the instructions as a whole in determining whether the jury was provided with sufficient understanding of the applicable standards. Zimmerman, 943 F.2d at 1213. Instructions 20–22 clearly articulated the correct standards necessary to answer the jury's question, defining the crime, the term knowingly, and what constitutes constructive possession. 1 R. 109–11. For these reasons, the district court did not abuse its discretion in directing the jury back to the correct instructions. See United States v. Alcorn, 329 F.3d 759, 766 (10th Cir. 2003) (finding that "[g]iven the adequacy of the instructions, the district court did not err in referring the jury to them").

## III.    Burden of Proof

Finally, Ms. Frias argues that the district court abused its discretion in instructing the jury on the government's burden of proof. However, Ms. Frias acknowledges that this court is bound by its decision in United States v. Petty, 856 F.3d 1306 (10th Cir. 2017), and raises this issue only to preserve it for review at the Supreme Court. We reject this argument because we are bound by Petty. See United States v. Brooks, 751 F.3d 1204, 1209 (10th Cir. 2014).

AFFIRMED.