FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DELANO MARCO MEDINA, a/k/a
Michael David Allen Bell, a/k/a William
Anders Bryant,

    Defendant - Appellant.

No. 17-1455

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CR-00396-PAB-1)**
_____

Antony Noble, The Noble Law Firm, LLC, Lakewood, Colorado for the
Defendant - Appellant.

E. Garreth Winstead, Assistant United States Attorney (Robert C. Troyer, United States
Attorney, J. Bishop Grewell Assistant U.S. Attorney, Andrea Surratt, Assistant U.S.
Attorney, on the brief), Denver, Colorado for Plaintiff - Appellee.
_____

Before **HARTZ**, **MATHESON**, and **EID**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

A federal grand jury indicted Delano Medina on October 7, 2014. He appeared for

the first time in federal court 27 months later on January 11, 2017. During that time, Mr.

Medina was transferred between various state authorities in three different states on at least 10 different sets of charges and was tried in two different state courts.  He moved to dismiss the federal indictment, arguing that the delay violated his Sixth Amendment right to a speedy trial.  He contended that the pretrial delay impaired his defense because his cell phone containing alibi evidence was lost before he was brought to federal court.  He also argued the delay prevented him from invoking his rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., at an earlier date.  The district court denied the motion because Mr. Medina had not adequately shown he suffered prejudice from the delay.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

The following discusses (A) the circumstances that caused the delay in Mr. Medina's initial appearance, (B) the constitutional and statutory speedy-trial guarantees, and (C) the district court proceedings.

### A.  *Factual Background*

#### 1.  **Mr. Medina's Indictment and Eventual First Appearance in Federal Court**

##### a.  *Initial indictment and first writ*

On October 7, 2014, a federal grand jury indicted Mr. Medina on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  In December 2014, he was arrested on unrelated state charges in Colorado.  In state court,

the federal government placed him under a detainer that ordered state authorities to hold him in light of the pending federal charges.[1]

On April 9, 2015, federal prosecutors sought a writ of habeas corpus to bring Mr. Medina into federal custody. The writ was returned unexecuted because Mr. Medina had been transferred to another state jurisdiction.

b. *Superseding indictment and second writ*

On June 9, 2015, the grand jury issued a superseding indictment against Mr. Medina charging 14 additional counts, including bank fraud, mail theft, identity theft, and possession of a firearm by a felon. On June 12, 2015, federal prosecutors again sought a writ to bring Mr. Medina into federal custody. That writ was returned unexecuted because Mr. Medina had been transferred to yet another jurisdiction.

Eric Manuel, a United States Postal Inspector, investigated the case leading to the indictments against Mr. Medina. According to records Inspector Manuel compiled, state authorities transferred Mr. Medina 46 times between his December 2014 arrest on state charges and his January 2017 appearance in federal court. He remained in continuous custody on state charges during the 27 months from his arrest until his first appearance in federal court. He shuffled between six counties in Colorado and spent more than 300 days of those 27 months in custody in Kansas and Nevada on charges from those jurisdictions. He was held for at least 10 distinct state matters. The record provides little

---

[1] A detainer is a "legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different [jurisdiction] for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

3

information about the charges, but they included being a felon in possession of a firearm. Mr. Medina stood trial in Colorado twice in the latter half of 2015.

      c. *Mr. Medina's request for speedy trial and third writ*

In early 2015, Mr. Medina wrote to several state officials seeking information about his federal charges and invoking his right to a speedy trial. In October 2015, his Colorado Department of Corrections ("DOC") case manager, Rodney Achen, erroneously told him he was not subject to a federal detainer, and Mr. Medina assumed any federal charges against him had been dismissed. But in October 2016, Mr. Achen informed him that he was, in fact, subject to a detainer on pending federal charges. In December 2016, Mr. Medina sent a "Motion for Entry of Appearance and Speedy Trial Request" to the United States District Court and the United States Attorney's Office for the District of Colorado.

On January 3, 2017, federal prosecutors sought a third writ of habeas corpus for Mr. Medina, nearly 19 months after the second writ. He finally appeared before a federal judge for the first time on January 11, 2017.

## 2. **Mr. Medina's Lost Cell Phone**

On April 4, 2015, Carmen Quintana, Mr. Medina's grandmother, retrieved his belongings, including his cell phone, from a detention facility in Jefferson County, Colorado. Exactly what happened to the cell phone after April 4 is unclear. As Ms. Quintana testified at the hearing described below, "[W]e had it for a few months and then I kept it. And then my other grandson got it and he kind of used it and then lost it." ROA, Vol. 3 at 70. She stated that the grandson had kept the phone in a safe. When

4

asked whether the safe was locked, Ms. Quintana responded that unknown individuals "took the safe." *Id.* at 71. She estimated that the phone went missing in October or November of 2015.

## B. *Legal Background—Speedy Trial Rights*

The Sixth Amendment and the Speedy Trial Act guarantee a federal criminal defendant the right to a speedy trial. Courts employ a four-factor balancing test to determine whether a delay violates the Sixth Amendment's Speedy Trial Clause. The Speedy Trial Act requires federal prosecutions to comply with statutory deadlines. This appeal concerns the constitutional protection. But because Mr. Medina argues that a delay in his ability to invoke his Speedy Trial Act rights prejudiced him and thereby contributed to his Sixth Amendment violation, we provide a brief summary of the Act.

### 1. Sixth Amendment Right to a Speedy Trial

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "This right attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Larson,* 627 F.3d 1198, 1207 (10th Cir. 2010) (quotations omitted). "[A]lthough the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010). "[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner." *Id.* at 1175-76.

In *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972), the Supreme Court established a four-part balancing test to determine whether a delay in post-indictment proceedings

5

violates a defendant's constitutional right to a speedy trial. The four factors are: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006) (citing *id.* at 530). "[N]o single factor is determinative or necessary"—instead, "all four are considered to determine whether a violation has occurred." *Seltzer*, 595 F.3d at 1176. *Barker*'s balancing test thus "compels courts to approach speedy trial cases on an ad hoc basis." *Barker*, 407 U.S. at 530. We address the factors in turn.

(1) <u>Length of delay</u>—The first *Barker* factor involves a "double inquiry." *Seltzer*, 595 F.3d at 1176. First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)). "Delays approaching one year generally satisfy the requirement of presumptive prejudice" under *Barker*'s first factor. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Second, if the defendant establishes presumptive prejudice, "the court must then consider, as one factor among several," the length of the delay. *Seltzer*, 595 F.3d at 1176 (quotations omitted).

(2) <u>Reason for delay</u>—The government has the burden "to present acceptable reasons for the delay." *United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014). In evaluating *Barker*'s second factor, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. As the Supreme Court explained,

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded

6

> courts should be weighted less heavily but nevertheless
> should be considered since the ultimate responsibility for
> such circumstances must rest with the government rather than
> with the defendant. Finally, a valid reason, such as a missing
> witness, should serve to justify appropriate delay.

*Id.* (footnote omitted).

Deferring a defendant's federal arraignment to allow another sovereign to conclude its prosecution is a permissible reason for delay. *See Seltzer*, 595 F.3d at 1178 ("We agree with our sister circuits that awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances.").[2] But waiting for another sovereign to complete its prosecution does not justify every delay, and "[t]he mere fact that the defendant was incarcerated on a previous charge for a portion of the delay does not by itself excuse the delay." *Id.*

Postponing a defendant's appearance in federal court to allow state proceedings to conclude is more likely to tip the second *Barker* factor in favor of the government where (1) there is "overlap in the charges or proceedings," (2) "concurrent proceedings would . . . be logistically cumbersome," or (3) the charges at issue are complex. *Id.*

---

[2] *Compare United States v. Thomas*, 55 F.3d 144, 150-51 (4th Cir. 1995) ("To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray."), *with United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009) ("Once federal prosecutors bring an indictment against a defendant, they have a duty to notify the District Court that the defendant should be arraigned and appointed counsel, and to bring the defendant to trial expeditiously.").

(3) <u>Assertion of right</u>—"[W]e assign strong weight to the defendant's assertion of his constitutional speedy-trial right, but we may weigh the frequency and force of his objections to the delay." *Margheim*, 770 F.3d at 1328 (quotations omitted). A defendant's early and persistent assertion of his right to a speedy trial will tip the third factor in his favor, but efforts to stall the proceedings, such as "moving for many continuances," will "tip the balance of this factor 'heavily against the defendant.'" *Id.* (quoting *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012) (brackets omitted)).

(4) <u>Prejudice</u>—"The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *Seltzer*, 595 F.3d at 1179 (quotations omitted). "[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's claim." *Margheim*, 770 F.3d at 1329.

In cases of "extreme" delay, the defendant need not present specific evidence of prejudice, but can rely on a "presumption of prejudice" resulting from the prolonged delay. *United States v. Frater*, 495 F. App'x 878, 882 (10th Cir. 2012) (unpublished) (citing *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009)). But "[g]enerally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." *Seltzer*, 595 F.3d at 1180 n.3. Absent such an "extreme" delay, the defendant must provide specific evidence of how the delay was prejudicial. *Margheim*, 770 F.3d at 329.

The Supreme Court has identified three interests that might be prejudiced by a delay in bringing a defendant to trial: "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and

8

(iii) minimization of the possibility that the defense will be impaired." *Seltzer*, 595 F.3d at 1179 (citing *Toombs*, 574 F.3d at 1275). Mr. Medina's arguments center on "the most important of these interests," the impairment of the defense. *Toombs*, 574 F.3d at 1275. We discuss that interest below and also address the Speedy Trial Act in the context of *Barker* prejudice.

    a. *Impairment of defense*

Impairment of the defense can come in several forms, including lost witnesses, *Barker*, 407 U.S. at 532; lost evidence, *United States v. Vaughan*, 643 F. App'x 726, 732-33 (10th Cir. 2016) (unpublished) (cited for persuasive value under Fed. R. App. P. 32.1, 10th Cir. R. 32.1); or denial of counsel, *Seltzer*, 595 F.3d at 1180.

In evaluating whether the loss of evidence during a delay amounts to prejudice, we have analyzed (1) the defendant's ability to demonstrate with specificity how the evidence would have aided his defense; (2) whether the government's delay in bringing the defendant to trial caused the evidence to be actually lost; and (3) whether the defendant took appropriate steps to preserve the evidence. *See Jackson v. Ray*, 390 F.3d 1254, 1264-66 (10th Cir. 2004). We address each of these considerations further.

    i. <u>Specificity of prejudice</u>

Proving that delay caused an impaired defense requires the defendant to "show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense." *Margheim*, 770 F.3d at 1331 ("We have looked with disfavor on defendants' hazy descriptions of prejudice."). Thus, "[i]n arguing that the unavailability of a witness impaired the defense, a defendant must state with particularity

9

what exculpatory testimony would have been offered." *Jackson*, 390 F.3d at 1265 (quotations omitted).

In *Vaughan*, 643 F. App'x at 732-33 (unpublished), we rejected a defendant's attempt to show that the delay in bringing him to trial prejudiced his defense by causing the loss of alibi evidence. The defendant's assertion that fellow employees and neighbors could attest to the defendant's location "days prior to the robbery" was not a meaningful alibi. *Id.* at 733.

### ii. Causation and actual unavailability

The defendant "must also present evidence that the delay caused the witness's unavailability." *See Jackson*, 390 F.3d at 1265.[3] We have interpreted this consideration to contain two parts. First, the defendant must show the government's delay caused evidence to be unavailable. *Id.* at 1266 (finding that the defendant "could have used [the deceased witness's] testimony if his trial had proceeded in a timely manner"). Second, the defendant must show the evidence was actually irretrievable for trial. *See Vaughan*, 643 F. App'x at 732 ("Vaughan did not present any evidence establishing that . . . [records showing he was working on the day of the crime] were, in fact, lost."). This showing can include the defendant's efforts to locate the evidence and why those efforts were unsuccessful. *See id.* at 733 ("Vaughan does not state what effort, if any, was made

---

[3] Although *Jackson* involved a showing that the government's delay caused a witness to be unavailable, we see no reason why this requirement should not apply to other forms of evidence. *See also Vaughan*, 643 F. App'x at 732 (discussing unavailability of business records).

to locate these witnesses . . . or specifically why [they] could not be located."); *United States v. Love*, No. 97-6360, 1999 WL 115523 at \*8 (6th Cir. Feb. 8, 1999) (unpublished) (finding no prejudice in part because the defendant "ha[d] not shown that [alibi witnesses] could not have been located with reasonable diligence").

### iii. Defendant's efforts to preserve the evidence

The defendant must also "take steps, when possible, to preserve testimony." *Jackson*, 390 F.3d at 1265; *see also United States v. Tranakos,* 911 F.2d 1422, 1429 (10th Cir. 1990) (declining to find prejudice where the defendants knew of criminal charges before key witness's death and took no steps to preserve witness's testimony); *Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993) ("Even assuming these individuals could have and would have provided exculpatory testimony, either Robinson or his attorney should have taken adequate steps to preserve their testimony for trial."). But when a defendant is not "on notice of the need to preserve testimony," or has no "realistic opportunity to do so," we have declined to view the failure to preserve testimony as fatal to a defendant's claim of prejudice. *Jackson*, 390 F.3d at 1265.

### b. *The Speedy Trial Act and* Barker *prejudice*

The Speedy Trial Act, 18 U.S.C. § 3161 et seq., sets deadlines for criminal prosecutions. A federal criminal trial must start within 70 days of the indictment or the defendant's first court appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). The Act excludes from this 70-day period certain delays caused by pending motions or continuances. The latter include "ends of justice" continuances, which a court can grant "on the basis of [the court's] findings that the ends of justice served by taking such action

11

outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Days excluded from the Speedy Trial Act calculation do not count toward the 70-day deadline. 18 U.S.C. § 3161(d)(2).

Mr. Medina does not contend that the 27-month delay between the original indictment and his first appearance in federal court violated the Speedy Trial Act. Rather, he asserts that the delay prevented him from invoking the Act sooner. In one case, we have recognized that such a deprivation can contribute to a finding of *Barker* prejudice under certain circumstances. *Seltzer*, 595 F.3d at 1180 ("Mr. Seltzer was prejudiced by the delay in his initial appearance, as the delay deprived him of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date."). But, as we discuss below, this case is distinguishable from *Seltzer*.[4]

---

[4] In *Seltzer*, a federal grand jury indicted Mr. Seltzer for counterfeiting and being a felon in possession of a firearm. 595 F.3d at 1173. Because he was serving a sentence on state drug charges, officers did not execute the federal arrest warrant against him. *Id.* In addition, the federal prosecutor decided not to proceed until state proceedings on unrelated drug charges were completed. *Id.* at 1174. In the meantime, Mr. Seltzer was unable to secure release from jail because he was under a federal detainer for the counterfeiting charge. He moved pro se in federal court for bond status and asserted his right to a speedy trial. He later moved for appointment of counsel and again asked for a speedy trial. The federal court appointed counsel, who repeatedly requested an arraignment for Mr. Seltzer before a magistrate judge. The prosecutor said there would be no appearance until state proceedings were completed. *Id.* Mr. Seltzer pled guilty to state charges in two separate counties and was sentenced. *Id.* at 1174-75. Approximately six months later, a superseding federal indictment charged him with additional counterfeiting offenses. *Id.* This court affirmed the district court's dismissal of the indictment based on the *Barker* factors. *Id.* at 1175-81.

## C. *Procedural Background*

### 1. **Indictments and Initial Appearance**

On October 7, 2014, a grand jury indicted Mr. Medina for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On June 9, 2015, the grand jury issued a superseding indictment against Mr. Medina that added 14 counts—four counts of mail theft, in violation of 18 U.S.C. § 1708; seven counts of bank fraud, in violation of 18 U.S.C. § 1344; two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and one felon-in-possession count, in violation of 18 U.S.C. § 922(g)(1). The charged conduct occurred from February through December 2014 in various cities in Colorado, Nebraska, and Iowa.[5]

Mr. Medina's first appearance in federal court occurred on January 11, 2017. His appointed counsel requested a 180-day "ends of justice" continuance under the Speedy Trial Act, which the court granted on February 6, 2017. Trial was set for October 2, 2017.

---

[5] The indictment alleged the following crimes and locations: Counts 1 and 15 (possession of a firearm by a felon)—District of Colorado; Count 2 (mail theft)—Grand Junction, Colorado; Counts 3 and 12 (bank fraud)—Pueblo, Colorado; count 4 (mail theft)—Durango, Colorado; count 5 (bank fraud)—Council Bluffs, Iowa; count 6 (bank fraud)—York, Nebraska; count 7 (mail theft)—Cortez, Colorado; count 8 (bank fraud)—Lincoln, Nebraska; counts 9 and 10 (bank fraud)—Grand Island, Nebraska; count 11 (mail theft)—Fort Collins, Colorado; Counts 13 and 14 (aggravated identity theft)—District of Colorado.

2. **Speedy Trial Motion**

On February 9, 2017, Mr. Medina filed a pro se motion to dismiss the superseding indictment. He alleged the Government's delay in bringing him into federal custody violated his Sixth Amendment right to a speedy trial. The district court struck the motion because Mr. Medina was represented by counsel.

On March 24, 2017, Mr. Medina filed another motion, this time through his counsel, asserting his Sixth Amendment speedy-trial right. He argued that all four *Barker* factors favored him. He alleged the delay had prejudiced his defense by causing

> (1) the loss of contact with Mr. Medina's former girlfriend and potential alibi witness Samantha Sears;[6]
>
> (2) a prolonged period of inactivity on his Facebook account, which prompted Facebook to delete his account and rendered key alibi information inaccessible;
>
> (3) the loss of his cell phone, the only means for him to access his saved Facebook records; and
>
> (4) the deprivation of an earlier opportunity to assert his rights under the Speedy Trial Act.

---

[6] At the hearing on his speedy-trial motion, Mr. Medina appears to have abandoned his argument that Ms. Sears's absence could support a finding of prejudice. The Government refuted Mr. Medina's contention that Ms. Sears was unavailable, reporting that it had "found the witness." ROA, Vol. 3 at 59. Mr. Medina's counsel then acknowledged, "Prejudice can't be based on her absence because she is located." *Id.* at 68-69. Even without this concession, Mr. Medina has waived this argument on appeal because he does not raise Ms. Sears's absence as a potential basis for prejudice under *Barker*'s fourth factor until his reply brief. *See Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) ("[I]ssues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived, and we will not consider the arguments [the appellant] raised for the first time in his reply brief.").

3. **Hearing on Speedy Trial Motion**

On April 7, 2017, the district court held a hearing on Mr. Medina's motion. The hearing focused on the second and fourth *Barker* factors—reason for delay and prejudice.

a. *Reason for delay*

At the hearing, Mr. Medina argued that the Government had no legitimate justification for delaying his first appearance, stating that "nothing prevented [it] from attempting more than two times in the spring and early summer of 2015" to bring him into federal court. ROA, Vol. 3 at 68.

The Government responded that the delay "was a matter of being in line to get an opportunity to hold Mr. Medina accountable," *id.* at 46, a matter of "waiting until he was done being moved around repeatedly," *id.* at 64.

Inspector Manuel testified that the first two writs issued for Mr. Medina came back unexecuted because Mr. Medina had already been moved from the location where the writs were sent. He stated that while the superseding indictment was pending, he was "always checking on things and staying up-to-date with" Mr. Medina's state court cases and "staying in contact" with state officials. *Id.* at 53-54. Inspector Manuel relayed information about Mr. Medina's changing locations to federal prosecutors. He also "attended and participated in" Mr. Medina's two 2015 trials on Colorado state charges. *Id.* at 51. He testified that there was no time during which he "los[t] contact or allow[ed] the Medina matter to sit . . . in a closet somewhere." *Id.* at 54.

b. *Prejudice*

As to prejudice, Ms. Quintana—the sole defense witness—testified about how Mr. Medina's phone was stolen. She explained that although Mr. Medina frequently asked about the phone before it was lost, he never asked her to deliver it to his attorney. Ms. Quintana also provided documents reflecting (1) her daughter's efforts to contact the phone company about tracking Mr. Medina's phone and (2) the phone company's response that it could not "track anything because the phone was inactive." *Id.* at 78-79.

Speaking directly to the court rather than testifying, Mr. Medina explained why he had not taken more precautions to safeguard the information on his cell phone. He said the evidence on his phone was necessary to his defense against the mail theft, bank fraud, and identity theft charges, and that he had not learned of those charges until his first appearance in federal court. Had he known of those charges, he "would have kept [his] cellphone because it had pictures and videos that could have substantiated [his] alibi." *Id.* at 87-88.

The Government argued Mr. Medina could not show prejudice as a result of the delay because (1) Ms. Sears had been found in the Denver area and (2) the Government had volunteered to retrieve Mr. Medina's data from Facebook. It argued that "[t]here is no indication that he has lost any evidence that would support any alibi defense" because Mr. Medina had not established that witnesses were unavailable to testify to his alibi. *Id.* at 88. The Government also argued that even if Mr. Medina had been delayed in invoking his Speedy Trial Act rights, that delay alone was not prejudicial to him.

16

## 4. **District Court Ruling**

The district court denied Mr. Medina's motion from the bench. It addressed each of the *Barker* factors, concluding that the length of delay, the reason for the delay, and Mr. Medina's assertion of his speedy-trial rights weighed in Mr. Medina's favor. The fourth factor, prejudice, weighed against him. The court addressed the factors as follows:

> (1) <u>Length of delay</u>—The 27-month delay between the original indictment and Mr. Medina's first appearance was "substantial" and weighed in his favor. *Id.* at 91.
>
> (2) <u>Reason for delay</u>—Because the Government failed to show that waiting for the resolution of Mr. Medina's state court cases "was a part of [its] strategy," the second factor "somewhat" favored Mr. Medina. *Id.* at 93-94.
>
> (3) <u>Assertion of right</u>—Mr. Medina's assertion of his speedy-trial right weighed "strongly in Mr. Medina's favor" because "he ha[d] been very diligent and assertive of the fact that he wanted a speedy disposition of all of the various matters that he had." *Id.* at 94.
>
> (4) <u>Prejudice</u>—Mr. Medina failed to state with adequate specificity how the missing evidence from his cell phone, along with Ms. Sears's testimony, would have aided his defense, and failed to show that the data he sought was unavailable.

The district court concluded that Mr. Medina had not demonstrated a violation of his Sixth Amendment right to a speedy trial.

## 5. **Pro Se Motions**

Following the district court's ruling, Mr. Medina filed several pro se motions asking the court to dismiss the indictment or move up the trial date.

17

a. *Initial motions and reconsideration*

On April 13, 2017, Mr. Medina filed a pro se motion for reconsideration.[7] The motion detailed additional alibi evidence—phone records, bank statements, and data from GPS-tracking applications on his cell phone—that allegedly was unavailable because his phone was lost. His counsel withdrew on April 27, and Mr. Medina was permitted to proceed pro se.

In a separate motion filed on May 1, 2017, Mr. Medina clarified his planned alibi defense. He stated that he planned to establish he was in Leadville, Colorado, from February 15 through April 1, 2014, and that was he was in Denver, Colorado, from May 1 through June 7, 2014—two cities not specified in the superseding indictment.

Between April and June 2017, Mr. Medina filed five additional motions objecting to the 180-day continuance his counsel had sought under the Speedy Trial Act and requesting his trial date be moved up. None of these motions included arguments about the *Barker* factors.

b. *District court ruling*

On June 22, 2017, the district court denied Mr. Medina's outstanding motions. First, it reaffirmed its decision to grant the 180-day ends-of-justice continuance. It

---

[7] In his reconsideration motion, Mr. Medina claimed that "[his lawyer] ha[d] failed to show how with [sic] specific information that Mr. Medina was prejudiced by the loss of his cell-phone and other relevant evidence at his speedy trial hearing." ROA, Vol. 1 at 181. He asked for his lawyer to be removed, explaining, "[N]umerous affidavits from Mr. Medina and family as well as a Proffer in Support of Prejudice were given to Counsel and he failed to appreciate that it was necessary to submit these documents." *Id.* at 181-82.

explained that the delay was warranted because "[t]he charges remain complex and the discovery has turned out to be as voluminous, as anticipated." ROA, Vol. 1 at 317. The court rejected Mr. Medina's argument that he had not approved of his counsel seeking the continuance, noting that Mr. Medina had previously admitted that he discussed the request with his counsel and agreed it was necessary.

Second, the court declined to reconsider its ruling on Mr. Medina's Sixth Amendment motion. It reasoned that Mr. Medina had not presented any new evidence since his April 7, 2017 hearing, and that he had given only "hazy descriptions of prejudice" that were insufficient to establish that the evidence stored on his cell phone was "vital to his defense." *Id.* at 320 (quotations omitted).

c. *Additional motions*

After the court denied the foregoing motions, Mr. Medina submitted four additional filings asserting his speedy-trial rights.[8]

These filings contained more specific allegations of prejudice than his previous motions. Mr. Medina pointed to data stored on his cell phone that might have helped him prove his alibi defense. He noted "application ('app') data history such as Facebook,

---

[8] Mr. Medina filed the following:
June 29, 2017—"Motion to Demand Forthwith Speedy Trial or Dismissal." ROA, Vol. 1 at 335.
July 11, 2017—"Motion to Dismiss for a Violation of the Constitutional Right to a Speedy Trial." *Id.* at 339.
August 21, 2017—"Defendant's Memorandum of Law in Support of Speedy Trial Prejudice." *Id.* at 374.
September 1, 2017—"Supplemental Brief in Support of Speedy Trial Prejudice." *Id.* at 396.

Instagram, Latitude, Snapchat, Foursquare, Pinterest, and various other apps" that would have shown his location, *id.* at 343; "call-log-history" that would have shown whom he called, *id.*; e-mail history, which would have shown "reservations made at Marriott hotels" and "updates on apps," *id.* at 344; "GPS data from Google Maps and navigation tools," which would have substantiated places visited and trips made, *id.*; WiFi networks his cell phone had logged into, which would have shown his location based on the IP address, *id.* at 345; audio files, a to-do list, and day planner, which would have "confirmed and supplemented [his] claimed alibi," *id.* at 345-46; "banking information from emails and on the Wells Fargo app" that "would have shown debit card transactions at hotels and gas stations," *id.* at 346; and finally, "cell-site-location-information" that would have shown Mr. Medina's location on specific dates alleged in the indictment, *id.*

Mr. Medina also included specific allegations about how the information on his cell phone could prove his absence from the locations in the superseding indictment. He claimed that his phone calls and text messages would show that he was working with his father in Leadville, Colorado, from February 15 through March 13, 2014, and could not have been present in Grand Junction or Pueblo, the locations specified in Counts 2 and 3, at that time. As to Count 4, Mr. Medina argued that his cell phone records would establish that he has "never even been to Durango[, Colorado]." *Id.* at 384. As to Count 5, he posited that his cell phone location data would help show he "does not know where Council Bluffs, Iowa is." *Id.* at 384-85. And as to Count 9, he contended that photos and videos from his phone would show that on June 2, 2014, he was not in Nebraska because he and Ms. Sears were attending a concert in Colorado.

20

The district court did not rule on these motions before Mr. Medina pled guilty.[9]

## 6. Plea Agreement and Sentencing

On September 14, 2017, Mr. Medina pled guilty to two counts of being a felon in possession of a firearm, one count of mail theft, one count of bank fraud, and two counts of identity theft. In the plea agreement, he reserved his right to appeal the Sixth Amendment speedy-trial issue.

At his sentencing hearing, the district court allowed Mr. Medina to introduce two new exhibits pertaining to his Sixth Amendment appeal: (1) a letter from TracFone Wireless, Inc. explaining that a subpoena would be required for the company to produce records dating back more than 90 days;[10] and (2) a transcript of a live chat with Straight Talk Mobile[11] explaining that the company "[g]enerally" keeps records "for up to two years," *id.* at 474.[12]

---

[9] In the plea agreement, Mr. Medina and the Government agreed that Mr. Medina could appeal "the constitutional speedy trial issue as raised in Defendant's *motions*." ROA, Vol. 1 at 433 (emphasis added). Mr. Medina does not argue that the district court's failure to rule on his motions was error. But even if it were, any error would be harmless in light of our consideration of the arguments Mr. Medina raised in each of his filings before his guilty plea.

[10] The district court issued a subpoena for cell-site location information from TracFone on June 28, 2017. *See United States v. Medina*, Case No. 14-cr-00396-PAB (D. Colo. Jun. 28, 2017), ECF No. 119. At sentencing, Mr. Medina introduced "partial records" TracFone produced in response. ROA, Vol. 3 at 167-68.

[11] Straight Talk is a service of TracFone. *See* ROA, Vol. 1 at 474.

[12] The district court did not address whether these exhibits should have affected the Sixth Amendment issue. For the reason stated in footnote 9, we consider them in our analysis below.

The district court sentenced Mr. Medina to 153 months in prison. He timely filed a pro se notice of appeal.

## II. **DISCUSSION**

On appeal, Mr. Medina argues the district court correctly determined that the first three *Barker* factors weighed in his favor but erred in concluding that he had not suffered prejudice under the fourth *Barker* factor. The Government contests the second factor, arguing that the reason for delay in bringing Mr. Medina to trial should weigh in its favor. Neither party contests the district court's analysis of the first and third factors.

### A. *Standard of Review*

We review a defendant's claim under the Sixth Amendment's Speedy Trial Clause de novo, *Margheim*, 770 F.3d at 1325, accepting the district court's factual findings unless they are clearly erroneous. *United States v. Black*, 830 F.3d 1099, 1111 (10th Cir. 2016).

We have not previously specified the appropriate standard of review for a district court's rulings on the individual *Barker* factors. Other courts have held that the *Barker* factors are legal questions, or at least mixed questions of fact and law, requiring de novo review. *See United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009); *United States v. Tchibassa*, 452 F.3d 918, 924 (D.C. Cir. 2006) (reviewing de novo the application of the *Barker* factors to the facts of the case). *But see United States v. Heshelman*, 521 F. App'x 501, 512 (6th Cir. 2013) (unpublished) (holding that the first three *Barker* factors are fact questions and only prejudice is a mixed question). We do not resolve this issue here because we can decide this appeal under de novo review.

22

We construe the pro se filings submitted to the district court liberally. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (explaining that pro se litigants' pleadings should be construed liberally even when they are represented by counsel on appeal).

## B. *Analysis*

The district court properly determined that Mr. Medina's Sixth Amendment speedy-trial right was not violated. Contrary to the district court's analysis, the Government's justification for delaying his appearance in federal court was persuasive and should tip the second *Barker* factor in the Government's favor. Furthermore, Mr. Medina failed to establish that the loss of his cell phone or the delay in his ability to assert his Speedy Trial Act rights prejudiced him under *Barker*'s fourth factor. Accordingly, the district court properly declined to dismiss the indictment.

### 1. **Reason for the Delay**

The reason for delay of Mr. Medina's first appearance in federal court—allowing the multiple state prosecutions to run their course—favors the Government under *Barker*. Although we have said this justification is not always valid, *see Seltzer*, 595 F.3d at 1178, it was valid in this case. "The typical reasons for respecting ongoing state proceedings as a valid justification for delay" were absent in *Seltzer* but were present here. *Id.*

First, in *Seltzer*, "there was no overlap in the charges or proceedings." *Id.* Here, Mr. Medina faced gun charges in both the state and federal cases. *See* ROA, Vol. 1 at 310.

Second, in *Seltzer*, "concurrent proceedings would not be logistically cumbersome." 595 F.3d at 1178. The federal courthouse was a "mere five blocks" from the county jail where Mr. Seltzer was housed. *Id.* Concurrent proceedings in Mr. Medina's case would, by contrast, have been a logistical ordeal. He spent about 300 days in state custody outside of Colorado. Even within Colorado, he had to be tried in Moffat County in the state's northwest corner, far from the Denver federal courthouse. He was sentenced in absentia after his transfer to federal custody because it was too difficult to transport him back to Moffat County. The Government's first two writ attempts to secure Mr. Medina's presence confirm this point. Each effort failed because he had been moved to another state detention facility. The *Seltzer* court recognized that "transportation costs and logistical concerns are one of the reasons for waiting for the end of the other sovereign's proceedings." 595 F.3d at 1178.

Third, in *Seltzer*, the court pointed to the "simplicity of the charges" in the superseding indictment—felon in possession of a firearm and four counts of counterfeiting (all of which arose out of a single counterfeiting incident). *Id.* at 1173, 1175, 1178. Mr. Medina's charges were more complex—multiple and different federal financial crimes that occurred in several states.

In short, this case is *Seltzer*'s opposite. The Government had ample grounds to defer to the state prosecutions before trying Mr. Medina in federal court. Our recent decision in *United States v. Frias*, 893 F.3d 1268 (10th Cir. 2018), further supports the Government's reason for delay in this case. In *Frias*, we held that "the government's initial delay in deferring to the state murder prosecution was warranted, but the nine

24

month delay after the state sentence was imposed was not." *Id.* at 1272. Here, the Government brought Mr. Medina to federal court before he had even been sentenced in his final state proceeding.

Finally, it was clearly erroneous for the district court to find that waiting for Mr. Medina's state cases to finish was not "part of the [Government's] strategy." ROA, Vol. 3 at 93. Federal prosecutors filed a detainer and two writs to bring Mr. Medina into federal court before ultimately choosing to let the states complete their proceedings. Inspector Manuel closely followed Mr. Medina's state proceedings after the first two writs failed. He kept in contact with state officials regarding Mr. Medina and relayed the information he learned to federal prosecutors. Rather than let Mr. Medina's case languish, federal officials prepared for Mr. Medina's trial and anticipated the eventual end of his state proceedings. This is not the kind of "neutral . . . negligence" that is properly weighed against the government. *Barker*, 407 U.S. at 531.

Unlike the district court, we conclude the second *Barker* factor weighs in the Government's favor.

2. **Prejudice**

Mr. Medina argues the district court should have found the fourth *Barker* factor tipped in his favor. First, he points to the loss of alibi evidence contained on his cell phone[13] and then addresses the three considerations spelled out above as to whether the

---

[13] On appeal, Mr. Medina summarizes his district court arguments, explaining he "asserted" that his pretrial delay caused "oppressive pretrial incarceration" and "anxiety and concern over the pending federal charges." Aplt. Br. at 13 (quotations omitted). This summary comes in the section of Mr. Medina's brief entitled "Issue raised and ruled

lost evidence caused prejudice. Second, he claims prejudice from delay in his ability to invoke the Speedy Trial Act.

We conclude that Mr. Medina has not shown the alibi evidence stored on his phone was irretrievable. And the delayed opportunity to invoke his Speedy Trial Act rights, considered in the context of Mr. Medina's numerous ongoing state court cases, did not result in *Barker* prejudice.

a. *Alleged prejudice from loss of Mr. Medina's cell phone*

Of the three considerations courts use to determine whether delay caused *Barker* prejudice, we assume that Mr. Medina satisfied the first one by providing sufficiently specific information as to how the alleged missing evidence would have aided his defense. We also assume he met the third consideration by showing that he took appropriate steps to safeguard his cell phone. But we conclude that he did not make an adequate showing on the second consideration that the delay rendered the evidence irretrievable. Accordingly, no prejudice resulted from the loss of Mr. Medina's cell phone.

---

upon." *Id.* at 7. It is not until page 20 of his brief that Mr. Medina makes arguments about the propriety of the district court's ruling. *See id.* at 20-21 ("The district court erred in finding that there was no specific prejudice to Mr. Medina from the loss of his cell phone caused by the delay."). The balance of his briefs focuses on two forms of prejudice he allegedly suffered—the loss of the alibi evidence on his cell phone and the delay in his ability to assert his Speedy Trial Act rights. We thus consider only the potential that the pretrial delay prejudiced him in those two ways.

### i.  Specificity and efforts to preserve—considerations (1) and (3)

We assume Mr. Medina met *Barker*'s specificity expectations.  He referenced several overlapping categories of evidence stored on or captured by his phone.  He also made specific allegations about how this evidence could prove his absence from the locations listed in the superseding indictment for at least five of the 15 counts.

We also assume that Mr. Medina took appropriate measures to preserve his access to the cell phone.  Although he did not instruct his grandmother to give the phone to his attorneys before it was stolen, *see* ROA, Vol. 3 at 74, he has stated (and the Government does not contest) that he was not aware of any federal charges against him other than the felon-in-possession charge at that time.  *Id.* at 87.  Had he known of the other charges, the only ones for which he planned to assert an alibi defense, he "would have kept [his] cell phone because it had pictures and videos that could have substantiated [his] alibi."  *Id.* at 87-88.  Mr. Medina "was not, therefore, on notice of the need to preserve [the evidence], nor did he have a realistic opportunity to do so."  *Jackson*, 390 F.3d at 1265.

Mr. Medina nonetheless cannot establish prejudice from the loss of the alleged alibi evidence on his phone because he has not shown that the evidence was unavailable from other sources.

### ii.  Causation and actual unavailability—consideration (2)

The second consideration has two parts.  Mr. Medina has satisfied the first part because he has shown that the delay caused his phone to be unavailable.  Ms. Quintana testified that the phone was lost in October or November 2015, 12 months after the initial indictment.  The Government stopped attempting to bring him into federal court after its

27

second writ was returned unexecuted in June 2015. Had he been brought into federal court before October, he could have retrieved the phone from Ms. Quintana which contained the alleged alibi evidence.

But Mr. Medina has not satisfied the second part because he has not established that he could not obtain the alleged alibi information from sources other than his cell phone. He provided a letter and online chat transcript from TracFone stating that the company generally keeps cell-site location data for only two years, which shows that the cell-site location data is unavailable. But he has not shown that other location information retained by third parties—for example, his email records or debit card transactions—cannot be obtained, or that his alibi witnesses were unavailable.[14] In other words, just because information stored in multiple places is not available from one source does not mean it is not available from any source. Mr. Medina has not shown that the information that would substantiate his alibi on various dates alleged in the superseding

---

[14] In its denial of Mr. Medina's motion for reconsideration, the district court explained that Mr. Medina had listed at least ten witnesses who might have been able to testify in support of his alibi defense and that he had not "explain[ed] why these witnesses cannot independently establish his whereabouts on the dates charged." ROA, Vol. 1 at 321. In response, Mr. Medina argues on appeal that he has been unable to locate at least some of these witnesses because their contact information was stored on his cell phone. It is possible that not having access to his cell phone prevented Mr. Medina from reaching these witnesses. But the only evidence he has provided of his attempts to reach them is an affidavit explaining that his family has attempted to make contact with some—but not all—of them. Even if all of his alibi witnesses were unreachable, he has failed to show that other means of substantiating his alibi are unavailable. He has not adduced evidence of failed attempts to retrieve his banking information, email records, hotel reservations, or other sources of data stored by third parties.

indictment is "irretrievably lost" because he cannot locate his cell phone. Aplee. Br. at 10. This failure is fatal to his allegation of prejudice resulting from the loss of alleged alibi evidence contained on his cell phone.

b. *Alleged prejudice from inability to assert Speedy Trial Act rights*

Mr. Medina's inability to assert his Speedy Trial Act rights until his first appearance in January 2017 does not tip the fourth *Barker* factor in his favor. Mr. Medina does not allege that his Speedy Trial Act rights were violated.[15] He argues only that, because his initial appearance was delayed, his ability to invoke the 70-day Speedy Trial Act deadline was delayed. Any delay in his first appearance would delay his ability to assert his Speedy Trial Act rights. But delay alone does not show prejudice. *See Frias*, 893 F.3d at 1274.[16]

Mr. Medina has not shown that he suffered prejudice from the delay. We stated in *Seltzer* that prejudice can occur when a defendant "would have been afforded the

---

[15] Nor could he. The Speedy Trial Act entitles a defendant to a trial "within seventy days from the filing date of the indictment or from the date on which defendant appears before a judicial officer, whichever date is later." *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998). Mr. Medina's first appearance was on January 11, 2017. His counsel obtained a 180-day ends-of-justice continuance extending the Speedy Trial Act window to 250 total days. That window would have closed on September 18, 2017, but Mr. Medina pled guilty on September 14, 2017.

[16] Mr. Medina later argued that his counsel sought that continuance without his consent. This argument sounds like an ineffective assistance of counsel claim, which he does not make on appeal and which is generally more appropriate for collateral review, not direct appeal. *United States v. Galloway*, 56 F.3d 1239, 1240-41 (10th Cir. 1995) (en banc).

protections of the statutory speedy trial clock at a much early [sic] point." 595 F.3d at 1170.[17] For two reasons, however, prejudice did not occur here.

First, Mr. Medina did not invoke the Speedy Trial Act deadline upon his arrival in federal court. Instead, he moved to add 180 days to the Speedy Trial Act period for his counsel's trial preparation. He thus asserts prejudice from a delay in his ability to invoke a right that he chose not to invoke.

Second, the circumstances in this case reflect the lack of prejudice found in *Frias*, not the prejudice found in *Seltzer*. In *Frias*, a federal grand jury indicted Ms. Frias for being a felon in possession, but she was prosecuted initially in state court for first-degree murder. 893 F.3d at 1271. Two years after her federal indictment and nine months after she pled guilty and was sentenced in state court, Ms. Frias made her first appearance in federal court. *Id*. We agreed with the district court that even though the first three *Barker* factors favored the defendant, she had not shown prejudice from the delay. *Id*. at 1272-75.

Drawing from the three interests recognized in *Barker* to guide the prejudice inquiry, we determined that Ms. Frias (1) suffered "no oppressive pretrial incarceration because [she] still would have been in custody on the state murder charge," (2) made no showing of special "anxiety and concern," and (3) also made no showing that "the delay impaired [her] defense." *Id.* at 1273.

---

[17] *Seltzer* does not explain why the inability to assert Speedy Trial Act rights at an earlier date may increase the "possibility that the defense will be impaired." 595 F.3d at 1179.

30

As to Ms. Frias's argument "that the delay affected the start of her statutory speedy trial clock[,] . . . a wait to assert such a right is implicit in any delay and therefore fails to establish the requisite prejudice necessary to trigger a constitutional violation, especially when Ms. Frias (unlike the defendant in *Seltzer*) has shown no lost opportunities from delay." *Id.* at 1274.[18]

Similarly to Ms. Frias, Mr. Medina (1) did not demonstrate that he suffered oppressive pretrial incarceration because he was in state custody from the time of his federal indictment to his first appearance, (2) made no showing of special anxiety or concern, and (3) as our cell phone discussion shows, made no showing that the delay impaired his defense. And, like Ms. Frias, Mr. Medina has not shown "lost opportunities" from the delay in his ability to invoke the Speedy Trial Act. *Id.* In *Seltzer*, by contrast, this court said delay prejudiced Mr. Seltzer in "at least three ways" by adding to his pretrial incarceration, denying his right to counsel, and postponing his invocation of the Speedy Trial Act. 595 F.3d at 1180.[19]

Mr. Medina asserts that if he had "been brought to federal court shortly after the warrant issued on the filing of the superseding indictment," the Speedy Trial Act's 70-

---

[18] As the district court observed, of the many jurisdictions bringing charges against Mr. Medina, "some case had to be the last in line." ROA, Vol. 3 at 85. Had it not been the federal government, one or more of Mr. Medina's state prosecutions would have been put on hold, giving rise to a delay similar to the one Mr. Medina contends prejudiced him here.

[19] The *Seltzer* court did not explain how the delay in Mr. Seltzer's ability to invoke the Speedy Trial Act may have prejudiced his defense or caused any "lost opportunities." *See* 595 F.3d at 1180-81.

31

day window would have coincided with "a period during which his grandmother still had his cell phone." Aplt. Br. at 24-25. But as discussed above, he has not suffered prejudice under *Barker*'s fourth factor from the delay that occurred here.

\*   \*   \*   \*

We thus conclude that the fourth *Barker* factor weighs against Mr. Medina.

## 3. *Barker* Balancing

The parties agree that the first and the third *Barker* factors favor Mr. Medina. As discussed, the second and fourth *Barker* factors favor the Government. We conclude that the combination of the Government's legitimate reason for delaying Mr. Medina's first appearance in federal court (factor 2) and Mr. Medina's having failed to show prejudice as a result of the delay (factor 4) outweighs the length of the delay (factor 1) and Mr. Medina's assertions of his speedy-trial right (factor 3). *Accord Margheim*, 770 F.3d at 1329 ("[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's claim."). The balance of these factors supports affirming the district court's denial of Mr. Medina's motion to dismiss the indictment on Sixth Amendment grounds.

## III. CONCLUSION

Because Mr. Medina was not deprived of his Sixth Amendment right to a speedy trial, we uphold his conviction and affirm the district court's judgment.

32