FILED
United States Court of Appeals
Tenth Circuit

February 8, 2023

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JOSHUA OMAR GARCIA,

    Defendant - Appellee.

No. 20-1386

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:17-CR-00358-CMA-1)**

_____

J. Bishop Grewell, Assistant United States Attorney (Matthew T. Kirsch, Acting United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Shira Kieval, Assistant Federal Public Defender, (Virginia L. Grady, Federal Public Defender, Jacob Rasch-Chabot, Assistant Federal Public Defender, and Joshua Omar Garcia with her on the brief), Denver, Colorado, for Defendant-Appellee.

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

Violating a defendant's Sixth Amendment speedy-trial right compels a severe remedy: dismissing the indictment with prejudice. But a defendant cannot avail himself of that protection when he did not diligently assert that right. After a

shoplifting incident at a Colorado Kmart and a shootout two days later, the federal and state governments both indicted Defendant Joshua Garcia. The federal government waited nearly twenty-three months to prosecute Defendant, while the state prosecution ran its course. The district court held the delay violated Defendant's Sixth Amendment right to a speedy trial and dismissed the federal indictment against him. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3731, we reverse.

## I.

On July 3, 2017, Defendant allegedly shoplifted from a Kmart in Aurora, Colorado. When he exited the store, Kmart employees, who had been watching him, confronted him. While talking with the employees outside the store, Defendant brandished and discharged a firearm at the ground before fleeing. Authorities did not apprehend Defendant until two days later, when they responded to a complaint of a man with a gun in a trailer. During his arrest, Defendant allegedly shot at law-enforcement officers. The District Attorney's Office filed a complaint against Defendant on July 11 based on the July 5 incident.

Then, on September 27, a federal grand jury returned a three-count indictment against Defendant based on the July 3 events. The indictment alleged that Defendant possessed a weapon in violation of 18 U.S.C. § 922(g)(1), robbed a Kmart store in violation of 18 U.S.C. § 1951(a), and knowingly used, brandished, or discharged a firearm during and in relation to a crime of violence in violation of 18 U.S.C.

2

§ 924(c)(1)(A)(i), (ii), and (iii).  The indictment remained sealed for almost two years while Colorado's case against Defendant proceeded in state court.

In state court, Defendant pleaded guilty to first-degree assault, and the court sentenced him to twenty-three years' imprisonment on August 16, 2019.  The day before, the government moved for a writ of habeas corpus ad prosequendum, requesting authorities bring Defendant from the state detention facility into the United States Marshal's custody to begin prosecuting the federal case.[1]  The district court granted that motion, unsealed the federal indictment, and on August 20, 2019, Defendant made his initial appearance in federal court.[2]

Defendant filed three motions to exclude 210 days from the speedy-trial clock, all of which the district court granted.  And, eight months after his initial appearance in federal court, Defendant moved to dismiss the indictment with prejudice for violation of his Sixth Amendment right to a speedy trial.  The district court granted Defendant's motion and dismissed the indictment against him, finding that all factors set forth in Barker v. Wingo, 407 U.S. 514, 530–32 (1972), favor Defendant and that the government violated his right to a speedy trial.  The district court determined that the delay prejudiced Defendant because it resulted in lost evidence and an

---

[1] Defendant contends that he spent the entire twenty-three-month pretrial period incarcerated only because of the federal detainer preventing him from bonding out of state custody, because though he could not afford the bond at first, his family committed to raising the money.

[2] Defendant also asserts that he did not learn of the sealed federal indictment against him pending in the District of Colorado until May 2019.

3

unnecessary two years' pretrial incarceration for him. The government then moved for reconsideration, but the district court denied that too because the government had not shown that the court "misapprehended the facts, a party's position, or the law." United States v. Christy, 739 F.3d 534, 539 (10th Cir. 2014). The government appeals both the indictment's dismissal and the denial of its motion for reconsideration.

## II.

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'" United States v. Jumaev, 20 F.4th 518, 532 (10th Cir. 2021) (quoting United States v. Medina, 918 F.3d 774, 779 (10th Cir. 2019)). Although we have described the speedy-trial right as "somewhat amorphous," the remedy for violating that right is "severe: dismissal of the indictment with prejudice." United States v. Black, 830 F.3d 1099, 1111 (10th Cir. 2016) (cleaned up). To determine whether a delay violates a defendant's Sixth Amendment speedy-trial right, we apply the four-part balancing test set forth by the Supreme Court in Barker. Jumaev, 20 F.4th at 532. "The four factors are: '(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.'" Medina, 918 F.3d at 780 (quoting United States v. Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006)).

We review the legal question of whether the government violated a defendant's Sixth Amendment right de novo "and any underlying district court factual findings for clear error." United States v. Frias, 893 F.3d 1268, 1272 (10th

4

Cir. 2018) (citing Black, 830 F.3d at 1111). "Clear error exists when a factual finding lacks any factual support in the record, or after reviewing the evidence, the record convinces us the district court made a mistake." United States v. Rico, 3 F.4th 1236, 1238 (10th Cir. 2021) (citing United States v. Hooks, 551 F.3d 1205, 1216 (10th Cir. 2009)).

## III.

Under Barker's test to determine whether a delay violates the Sixth Amendment, "[n]o single factor is determinative or necessary"; we consider "all four . . . to determine whether a violation has occurred." Black, 830 F.3d at 1111 (quoting United States v. Seltzer, 595 F.3d 1170, 1176 (10th Cir. 2010)).

## A.

The district court correctly determined that the first factor favors Defendant; and the government agrees. The length-of-delay factor typically serves as a gatekeeper. Frias, 893 F.3d at 1272. "We examine the other factors only when the delay is presumptively prejudicial," Jumaev, 20 F.4th at 532 (quoting Frias, 893 F.3d at 1272)—a requirement that "[d]elays approaching one year generally satisfy," United States v. Batie, 433 F.3d 1287, 1290 (10th Cir. 2006) (citing Doggett v. United States, 505 U.S. 647, 652 n.1 (1992); Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004)). "The delay period starts with the indictment or arrest, whichever comes first." Jumaev, 20 F.4th at 533 (quoting United States v. Nixon, 919 F.3d 1265, 1269 (10th Cir. 2019)). And it ends at conviction. Id. (citing Betterman v. Montana, 578 U.S. 437, 441 (2016)).

5

The grand jury returned the indictment against Defendant on September 27, 2017, and federal authorities arrested him on August 20, 2019, when the district court unsealed the indictment. The parties do not contest the district court's determination that Defendant's rights attached when the government filed the sealed indictment on September 27, 2017—twenty-three months before Defendant's arrest. Twenty-three months is presumptively prejudicial. See Batie, 433 F.3d at 1290 ("Delays approaching one year generally satisfy the requirement of presumptive prejudice."). And the district court determined that "the delay stretche[d] beyond the bare minimum needed to trigger judicial examination of the claim." Seltzer, 595 F.3d at 1176 (quoting Doggett, 505 U.S. at 652) (stating that when the accused makes a showing that the delay is presumptively prejudicial, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.) The government does not dispute this determination. Thus, the length of delay favors Defendant.

B.

The second Barker factor focuses on the reason for the delay. This factor is especially important. Seltzer, 595 F.3d at 1177 (citing United States v. Loud Hawk, 474 U.S. 302, 315 (1986)). Both the prosecutor and the court have an affirmative constitutional obligation to timely try a defendant. Jumaev, 20 F.4th at 533 (citing United States v. Muhtorov, 20 F.4th 558, 639 (10th Cir. 2021)). Thus, the prosecution must explain the cause of the pretrial delay. Id. (citing Muhtorov, 20

6

F.4th at 639). A deliberate attempt to delay trial to hinder the defense weighs heavily against the government. Seltzer, 595 F.3d at 1177 (citing Barker, 407 U.S. at 531). A more neutral reason, such as negligence or overcrowded courts, weighs less heavily against the government—though the government still bears responsibility for "such circumstances." Id. (quoting Barker, 407 U.S. at 531). But a valid reason, like a missing witness, justifies appropriate delay. Id. (citing Barker, 407 U.S. at 531).

The government asserts it delayed prosecuting Defendant until Colorado completed its case against him for, among other things, reasons of comity. Waiting for the completion of another sovereign's prosecution can justify a delay in some— but not all—cases. See id. at 1178. The government must explain why it needed to wait in a particular case. Frias, 893 F.3d at 1272. Three subfactors can tip the second Barker factor in favor of the government: when (1) the charges or proceedings overlap, (2) "concurrent proceedings would . . . be logistically cumbersome," or (3) the defendant faces complex charges. Medina, 918 F.3d at 781 (quoting Seltzer, 595 F.3d at 1178).

The district court determined the government failed to show this case's circumstances necessitated the delay. It found: (1) the federal and state proceedings minimally overlapped because only Defendant's involvement and discharge of the same firearm linked the July 3 and 5 incidents; (2) prosecuting both cases simultaneously would not unduly burden the government because each sovereign could work together to transfer Defendant from its custody and document the

firearm's chain-of-custody transfers; and (3) the charges were not complex because the facts surrounding the July 3 incident are straightforward.

The government argues Defendant's state and federal charges significantly overlapped because the first count—possession of a firearm by a felon—included Defendant's possession of the firearm on July 5 when he fired at the police officers, the event underlying Colorado's case. And the government notes that if the state had prosecuted Defendant for illegal gun possession, the United States likely would not have needed to bring its own gun-possession charge. The government also contends that concurrent state and federal proceedings would have caused logistical difficulties due to the possibility of competing hearings, trials, and demands for witnesses and custody of Defendant, along with chain-of-custody issues with the firearm and the potential for inconsistent testimony. Last, the government asserts that Defendant's attempted murder charge in the state case was complex because murder cases are inherently complex. See Nixon, 919 F.3d at 1272. And attempt crimes add the requirement of proving a substantial step "strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense," Colo. Rev. Stat. Ann. § 18-2-101(1), making an attempted-murder charge arguably more complex.

The district court erred in finding minimal overlap between the federal and state cases against Defendant. It detailed that, because the federal charges relate only to the July 3 shoplifting incident and the state charges involve only the July 5 shooting-at-law-enforcement incident, the two cases have little in common. But count one of the federal indictment charges Defendant with unlawfully possessing a

8

firearm in violation of 18 U.S.C. § 922(g)(1) from July 3, 2017, up to and including July 5, 2017.  So the district court incorrectly determined that the federal charges did not involve the July 5 firearm possession.

The district court also gave insufficient weight to the difficulties that prosecuting Defendant's federal and state cases simultaneously would place on the state and federal governments.  In this Circuit, the undue burden inquiry has focused on varying factors, including the avoidance of jurisdictional conflicts and the burden of transporting the defendant to federal court.  So, where dual court proceedings will require "ping-ponging [the defendant] between state and federal custody," we have held that the government could permissibly delay proceedings.  Nixon, 919 F.3d at 1270.  Similarly, where concurrent proceedings will pose a "logistical ordeal" because the defendant is in state custody many miles from the federal courthouse, we have upheld a delay in proceedings.  Medina, 918 F.3d at 789.  But where the state is holding a defendant only five blocks from the federal courthouse, we have found the burden of making a defendant appear in federal court less compelling.  Seltzer, 595 F.3d at 1178.

In this case, the state held Defendant twenty-four miles from the federal courthouse.  So, if the government sought to justify the delay based upon the difficulty of transport from state custody to the federal courthouse, it might be a close call.  But the government's justification in this case rests more on jurisdictional conflicts, issues of comity, and the logistical ordeal of transporting not only

defendant, but evidence critical to both cases.[3]  And that argument makes the case more akin to Nixon, where the state defendant resided within one and a half miles of the federal courthouse, but the "federal authorities weren't waiting on the state case to save on mileage or time; they were waiting in order to avoid jurisdictional conflicts over custody."  Nixon, 919 F.3d at 1271.  Thus, like we did in Nixon, we conclude the delay caused by the government's decision to wait until the state prosecution finished to avoid jurisdictional conflicts was permissible.

And the district court also erred in finding the charges against Defendant were not complex.  Our authorities demonstrate that determining whether charges are complex can require a detailed inquiry.  In Seltzer, we determined the defendant's charges—"felon in possession of a firearm and four counts of counterfeiting (all of which arose out of a single incident)"—lacked complexity.  Medina, 918 F.3d at 789 (citing Seltzer, 595 F.3d at 1173, 1175, 1178).  But in Medina, which involved "multiple and different federal financial crimes that occurred in several states," including bank fraud, mail theft, identify theft, and possession of a firearm by a felon, we held the charges were complex.  Id. at 778, 789.  And we have generally recognized that state murder cases are inherently complex and can support the federal government deferring to the state proceeding.  Nixon, 919 F.3d at 1272.

---

[3] Physical possession of the firearm would have been necessary for both prosecutions; and transporting the firearm between jurisdictions would lead to chain-of-custody issues and an increased logistical burden on both sovereigns.  True, custody logs could mitigate the potential for harm stemming from the transfers.  But the fact that a burden can be, in part, mitigated, does not undermine its legitimacy.

The district court distinguished Nixon because the state charged Defendant with attempted murder (as opposed to murder) and Defendant ultimately pleaded guilty to assault. But the crime to which Defendant pleaded is not relevant to the complexity inquiry in this case because his plea did not take place until twenty-one months into the twenty-three-month delay. During the delay, the government could not have known that either the state or Defendant would agree to Defendant pleading to assault. So, for purposes of our inquiry, we must analyze the complexity issue based upon the crime with which the state charged him: attempted murder.

Though attempted murder does not fall squarely within Nixon's categorization of murder charges as complex, we conclude the charge at least minimally meets the definition of complex as described in Nixon. Indeed, attempted murder is arguably more complex because to prove an attempt crime, the government must show the intent to commit the substantive offense plus the "commission of an act which constitutes a substantial step towards commission of the substantive offense." United States v. Vigil, 523 F.3d 1258, 1267 (10th Cir. 2008) (quoting United States v. Smith, 264 F.3d 1012, 1015 (10th Cir. 2001)); see also Colo. Rev. Stat. Ann. § 18-2-101(1). Thus, we hold the second factor weighs in the government's favor.

C.

The district court also erred when it determined the assertion-of-his-right factor favors Defendant. "Under the third Barker factor, we look to 'whether the defendant has actively asserted his right to a speedy trial.'" Black, 830 F.3d at 1120 (quoting Batie, 433 F.3d at 1291). While it matters that a defendant asserted the

11

right, we also consider "the frequency and force of the objections." Id. (quoting United States v. Latimer, 511 F.2d 498, 501 (10th Cir. 1975)). "The third Barker factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right." Id.

Frias illustrates the type of assertion that results in weighing this factor in favor of the defendant. There, the defendant's federal indictment remained sealed for two years after her state-court sentencing and she moved to dismiss the indictment less than two months after her initial appearance in federal court. We held this factor slightly favored the defendant because we doubted she could have asserted her speedy-trial rights earlier. Frias, 893 F.3d at 1271, 1273. But in Nixon, we held this factor favored the government, even though it waited nearly a year to arraign the defendant, because he knew within two weeks of his federal indictment that the federal government was charging him but waited almost a year after indictment to invoke his right to a speedy trial. 919 F.3d at 1269, 1272–73.

In this case, though the federal grand jury indicted Defendant on September 27, 2017, the federal indictment remained sealed until August 20, 2019, while Colorado's case against Defendant proceeded in state court. But Defendant's attorney in the state-court proceedings contacted the U.S. Attorney's Office ("USAO") on May 17, 2019 to inquire about the existence of a federal case. The USAO did not provide any details about the substance of the federal charges, but it explained that the federal case would begin when the state court case ended. Still,

12

Defendant did not move to dismiss the federal indictment against him for violation of his speedy-trial rights until nearly a year after the discussion—and eight months after his initial appearance in federal court.

The district court determined this factor favored Defendant because he only had a general impression that he could face federal charges and he could not have gained any additional information because the indictment was sealed. But the government does not challenge Defendant's decision not to file a speedy-trial motion before the district court arraigned him in August 2019. Rather, the government argues that this factor favors it because, after appearing in federal court, Defendant waited eight months to file his speedy-trial motion and filed three continuances seeking to exclude 210 days from the speedy-trial clock.

At bottom, the third "factor weighs against a defendant who requests continuances and waits for months to assert his speedy trial right." United States v. Larson, 627 F.3d 1198, 1208 (10th Cir. 2010) (citing United States v. Toombs, 574 F.3d 1262, 1274–75 (10th Cir. 2009)). And, as in Nixon, where the defendant waited nearly a year to file his speedy-trial motion even though the indictment was available to him, Defendant waited eight months and requested three continuances before filing his motion after the court unsealed the indictment. Thus, we conclude the third Barker factor weighs in favor of the government.

D.

Finally, the district court erred in determining that the fourth Barker factor weighed in Defendant's favor.  As the individual claiming the Sixth Amendment violation, Defendant must prove the delay prejudiced him.  See Black, 830 F.3d at 1121 (citing Seltzer, 595 F.3d at 1179).  Most of the time, failing to specify prejudice will "eviscerate the defendant's claim."  United States v. Margheim, 770 F.3d 1312, 1329 (10th Cir. 2014).  We evaluate prejudice by considering the interests that the speedy-trial right protects: (i) preventing oppressive pretrial incarceration; (ii) minimizing the accused's anxiety and concern; and (iii) minimizing the possibility of impairing the defense.  Seltzer, 595 F.3d at 1179 (citing Toombs, 574 F.3d at 1275).

The third interest—impairing the defense—is the most serious "because the inability of a defendant to adequately prepare his case skews the fairness of the entire system."  Id. at 1179–80.  And "[b]ecause the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important factor."  Id. at 1180 (quoting Jackson, 390 F.3d at 1264).  Some cases of extreme delay excuse the defendant's obligation under this factor to show specific evidence of prejudice, but generally the court requires at least a six-year delay before allowing the delay itself to constitute prejudice.  Id. at 1180 n.3 (citing Jackson, 390 F.3d at 1263).

The district court determined that Defendant suffered prejudice because: (1) the delay caused the loss of relevant evidence; and (2) Defendant experienced an

14

unnecessarily prolonged period of pretrial incarceration.  We conclude that neither determination was correct.

1.

The district court determined that the government's delay caused the loss of video evidence because the Kmart where the shoplifting incident occurred closed during the two years that the federal indictment was sealed.  We evaluate whether the loss of evidence during a delay amounts to prejudice by considering "(1) the defendant's ability to demonstrate with specificity how the evidence would have aided his defense; (2) whether the government's delay in bringing the defendant to trial caused the evidence to be actually lost; and (3) whether the defendant took appropriate steps to preserve the evidence."  Medina, 918 F.3d at 781–82 (citing Jackson, 390 F.3d at 1264–66).

Here, Defendant fails to carry his burden at the second element: "whether the government's delay . . . caused the evidence to be actually lost."  Id. at 781 (citing Jackson, 390 F.3d at 1264–66).  To satisfy the second element, "the defendant must show the government's delay caused evidence to be unavailable" and that "the evidence was actually irretrievable for trial."  Id. at 782 (citing Jackson, 390 F.3d at 1266; United States v. Vaughan, 643 F. App'x 726, 732 (10th Cir. 2016)).  "This showing can include the defendant's efforts to locate the evidence and why those efforts were unsuccessful."  Id.

The Kmart where the incident took place closed approximately four months after the July 3 incident.  And, based in part on this fact, the district court presumed

15

(and ultimately determined) that the loss was attributable to the government's delay because of the likelihood the video recordings would have been available as evidence if this case had been prosecuted promptly.

But Defendant never put forth evidence showing the video evidence would have been available *at any time*, even if the Kmart had not closed—and this was his burden. See Black, 830 F.3d at 1122. Contrary to the manner in which the district court considered the issue, it was not the government's burden to disprove the loss of video evidence. Relatedly, Defendant makes no assertion that the lost footage would have been available if the government did not violate the speedy trial clock. The only assertion he makes is how the evidence—if available—could have helped his case. Those are distinct claims. As our case law makes clear, "the defendant must show the government's delay caused evidence to be unavailable." Medina, 918 F.3d at 782 (citing Jackson, 390 F.3d at 1266). Defendant did not make that showing.[4]

2.

The district court also determined that Defendant experienced an unnecessarily prolonged period of incarceration because the federal detainer prevented him from bonding out in his state case. According to the district court, Defendant presented

---

[4] Indeed, neither side presented evidence to the district court on the motion to dismiss regarding the availability of the video footage. Then, on the motion for reconsideration of the district court's grant of the motion to dismiss, the only evidence before the district court suggested that Defendant *could not* show the government's delay caused the evidence to be unavailable, because the video evidence was deleted thirty-six days after the July 3 incident and before the federal grand jury returned the indictment.

16

compelling evidence that his family started gathering funds to post bond when they learned that the federal detainer prevented him from bonding out of state custody. Thus, by waiting for the state case to conclude before beginning the federal prosecution and placing a federal detainer on him, the government assured that Defendant would be in custody until he was brought into federal custody. Relying on Seltzer and our recognition that "prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon," the district court determined the fourth Barker factor weighed heavily in Defendant's favor. Seltzer, 595 F.3d at 1180. We disagree.

In our view, the district court's determination overlooks two key items that distinguish this case from Seltzer: (1) a twenty-three-month delay does not constitute presumptively extreme delay, see Toombs, 574 F.3d at 1275; and (2) the state court gave Defendant credit for his pretrial incarceration against his twenty-three-year state sentence, thus mitigating the potential oppressive effects of incarceration, see, e.g., Hakeem v. Beyer, 990 F.2d 750, 762 (3d Cir. 1993) ("Credit for time served cannot cure every unexcused delay but where the defendant has not pointed to any evidence of additional, specific prejudice flowing from the delay, we are unwilling to infer prejudice based on incarceration that the defendant would ultimately have had to serve solely because fourteen and one-half months had elapsed between arrest and trial."); Gray v. King, 724 F.2d 1199, 1204 (5th Cir. 1984) (explaining "credit for the time so served" "mitigate[s] the potential oppressive effects of this incarceration").

17

Moreover, as in <u>Toombs</u>, "[e]ven assuming . . . prevention of oppressive pretrial incarceration and minimization of the accused's anxiety and concern[] weigh in [Defendant's] favor, the third, and most important [interest (impairing the defense)], does not."  574 F.3d at 1275.  That is, pretrial detainment alone (that is not presumptively extreme) is insufficient proof of prejudice.  Under these circumstances, without evidence that the defense was hindered as a result of the delay, the fourth <u>Barker</u> factor simply cannot weigh in Defendant's favor.

E.

In sum, the parties concede that the first factor, the length of the delay, favors Defendant.  But the second factor, reason for the delay, and third factor, assertion of the speedy-trial right, favor the government because the government justified the delay and Defendant waited eight months and requested three continuances before moving to dismiss the indictment for violation of his Sixth Amendment speedy-trial right.  The fourth factor, prejudice, also favors the government because Defendant failed to carry his burden of showing that evidence was lost because of the delay.  Although no single factor is dispositive, "[a]bsent extraordinary circumstances, <u>Barker</u> counsels us not to find a violation of the right to a speedy trial when the defendant's actions indicate he had no desire for a speedy trial."  <u>Larson</u>, 627 F.3d at 1211 (quoting <u>Toombs</u>, 574 F.3d at 1276); <u>see also</u> <u>Jumaev</u>, 20 F.4th at 545–46 (holding that the defendant's speedy-trial claim fails where factors one and four weigh in his favor and factors two and three weigh against him because "with the third factor weighing against Jumaev, his speedy trial claim fails").  Here, the

18

balance of factors favors the government and—more importantly—we echo the Supreme Court's reluctance to find a constitutional speedy-trial-right violation when the defendant failed to adequately assert that right.  See Barker, 407 U.S. at 536.  Thus, we hold that the delay did not violate Defendant's speedy-trial right and the district court improperly dismissed his indictment.

V.

The other issue on appeal is whether the district court erred in denying the government's motion for reconsideration of the grant of Defendant's motion to dismiss.  But because we reverse and remand on the grant of the motion to dismiss in the first instance, we do not reach the government's appeal of the denial of its motion for reconsideration.

For these reasons, we REVERSE the district court's decision dismissing Defendant's indictment and REMAND for further proceedings consistent with this opinion.