FILED
United States Court of Appeals
Tenth Circuit

May 29, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DESHAWN DEMARCUS HOUSE,

    Petitioner - Appellant,

v.

JEFF LONG; PHIL WEISER, Attorney
General,

    Respondents - Appellees.

No. 25-1119
(D.C. No. 1:23-CV-02072-SKC)
(D. Colo.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

To appeal the denial of an application for a writ of habeas corpus, the applicant

must first obtain a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1).

Petitioner-Appellant DeShawn Demarcus House, a prisoner in state custody, seeks a

COA regarding the district court's denial of his habeas application. Because reasonable

jurists could not debate the district court's rejection of Mr. House's constitutional claims,

we deny his application for a COA. We also deny Mr. House's motion for leave to

proceed in forma pauperis ("IFP"), ECF No. 13, his motion for discovery, ECF No. 14,

and his motion for a transfer or conditional bail, ECF No. 15.

---

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.    BACKGROUND

On February 25, 2022, Mr. House was convicted by a jury in Colorado state court for first-degree assault, second-degree burglary, second-degree kidnapping, third-degree assault, two counts of menacing, two counts of violating a protection order, and two sentence enhancers for using a deadly weapon and causing serious bodily injury. On direct appeal, the Colorado Court of Appeals ("CCA") affirmed all his convictions. Mr. House then filed the instant application for habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the District of Colorado.

### A.    Relevant Factual Background

Mr. House's habeas claims largely stem from his dissatisfaction with (1) delays in bringing his case to trial, (2) the efficacy of his trial counsel's representation, and (3) the trial court's refusal to allow him to proceed pro se until it was satisfied that his waiver of counsel was knowing and voluntary. Thus, we first outline the procedural history relevant to these concerns.

Mr. House was arrested on May 24, 2020, after kicking in the front door to his ex-girlfriend's home and stabbing her sister and stepfather as they tried to defend her. Mr. House appeared in state court on June 1, 2020, and on June 3 the state filed a complaint charging Mr. House with thirteen offenses. Additional charges were added in superseding complaints, including two charges for attempted first-degree murder. On October 19, 2020, Mr. House entered a plea of not guilty to all charges against him. At that time, his trial was set for March 16, 2021.

2

On February 3, 2021, defense counsel notified the trial court that the prosecution had not yet produced medical records it was required to produce under Colorado Rule of Criminal Procedure 16(I)(a)(3). The prosecution agreed "that it needed to provide some medical records and DNA evidence to the defense." ROA Vol. I at 251. On February 9, which was the relevant discovery deadline, the prosecution asked the trial court to extend its deadline by fourteen days, averring that it had requested the records and followed up multiple times but "had not yet received them." *Id.* at 52, 251. Defense counsel objected to an extension—noting that further delay would not provide enough time to prepare for the March 16 trial date—but the trial court granted the prosecution's request and extended the prosecution's supplemental expert disclosure deadline. Defense counsel soon after asked the court to reset the trial date because counsel "needed time to investigate information in the newly disclosed medical records." *Id.* at 252. Consequently, the trial court granted the motion and rescheduled the trial for May 25.

On May 13, defense counsel filed a motion to determine whether Mr. House was competent to stand trial, which the court considered at a hearing the next day. At that hearing, Mr. House told the trial court he wanted to proceed pro se because he was frustrated with the delays in going to trial; the competency motion was meritless; and his attorney was withholding relevant discovery from him. The trial court denied the request, finding Mr. House's "request to proceed pro se was the result of his frustration with being held in custody" and was not a knowing and intelligent waiver of counsel. *Id.* at 262. The trial court ordered Mr. House's competency to be evaluated and stayed all proceedings,

3

including the trial, pending the outcome of that evaluation. On June 21, the trial court found that Mr. House was competent.

Also on June 21, Mr. House's counsel requested permission to withdraw from representing Mr. House, at Mr. House's request. At a hearing into this matter on June 22, the court told Mr. House "that appointing new counsel would cause delays in his case while they prepared" for trial. *Id.* at 263. Because he did not want further delays, Mr. House agreed to move ahead with his current counsel. As such, the court found there was "no legal conflict between [Mr. House] and his attorney and ordered his appointed counsel to remain on the case." ROA Vol. III at 120. The trial date was thereafter set for September 14, 2021.

But then on August 6, Mr. House filed motions asking the trial court to appoint him new counsel. The court conducted a hearing into this matter on August 19, at which Mr. House asserted that his counsel "had ignored his speedy trial complaints and had not provided him with discovery materials, and that [counsel's] request for a continuance and competency concerns were baseless." ROA Vol. I at 264. When Mr. House's counsel agreed that there had been a breakdown of communication and trust, the court allowed counsel to withdraw from the case.

The court then again warned Mr. House that if he was appointed new counsel, counsel likely "would need extra time to prepare for trial." *Id.* Mr. House responded that he was willing "to proceed pro se if an attorney could not prepare in time." *Id.* The court expressed concern that Mr. House "was not competent to represent himself at trial," and explained "the complexities and stakes in the case at length." *Id.* at 264–65. Considering

4

the complex nature of his case, the court asked Mr. House if he wanted "an attorney to represent him," and Mr. House responded, "Yes." *Id.* at 265. The court thus appointed counsel from the Colorado Office of the Alternate Defense Counsel ("ADC"), and as expected ADC counsel promptly asked the court to extend several deadlines and to continue the September 14 trial date.

At this point, Mr. House objected to resetting the trial date and again asked to proceed pro se. The trial court responded with several mandatory advisements about the risks of proceeding pro se—the court explained the many charges against Mr. House and the penalties they carried, reminded him about his inexperience with criminal law, inquired whether he was under the influence of drugs or alcohol, and explained the benefits of having counsel. The court also expressed it was concerned that Mr. House's request "might be motivated by the desire to get the case over with quickly." *Id.* at 267. The court then terminated the hearing until the next day, August 20, so that it could try to find counsel that could be ready for trial by September 14. At the resumed hearing, the court informed Mr. House that it had checked with other attorneys and "none believed they could prepare and competently represent House in the short time before the September 14 trial." *Id.* The court told Mr. House he could proceed pro se if he was truly unwilling to extend the trial date, and Mr. House responded "that he felt pressured by the trial court to go pro se to preserve his speedy trial right." *Id.* at 268. On hearing this, the trial court found that Mr. House's desire to proceed pro se was not knowing and intelligent, noting that he did not have enough time to "adequately prepare for trial, was fixated on alleged speedy trial violations, and had vacillated numerous times on whether

5

he wanted an attorney." *Id.* Accordingly, the court granted the ADC counsel's request for a continuance and reset the trial for January 18, 2022.

After this point, Mr. House continued to argue that his speedy trial rights were being violated and that he wanted to proceed pro se, causing the trial court to conduct another hearing into this matter on October 9, 2021. After again stressing the dangers of proceeding pro se and giving all mandatory advisements, the court found that Mr. House "persisted in his desire to represent himself, and that his decision was voluntary, knowing, and intelligent." ROA Vol. III at 121. The district court therefore allowed Mr. House to proceed pro se.

On November 19, 2021, Mr. House filed a motion asking the trial court to appoint advisory counsel. The court conducted a hearing on November 29, at which Mr. House told the court "he wanted advisory counsel solely" for the purpose of pursuing "his speedy trial claims." ROA Vol. I at 282. The trial court denied Mr. House's request because "it had already considered the [speedy trial] issue and denied [his] speedy trial claims by written order." *Id.*

Finally, one week before the January 18 trial, the trial court declared a mistrial pursuant to a local court order "suspend[ing] jury trials until January 28[] due to rising Covid-19 rates" in the area. *Id.* at 283–84. Mr. House's trial was reset for February 22, 2022, and took place on that date. At trial, the jury acquitted Mr. House of both counts of attempted first-degree murder, one count of first-degree assault, and one count of second-degree assault. But it convicted him of first-degree assault, second-degree burglary, second-degree kidnapping, third-degree assault, two counts of menacing, two counts of

6

violating a protection order, and two sentence enhancers for using a deadly weapon and causing serious bodily injury. Mr. House was sentenced, in total, to thirty-two years in custody. The trial court awarded him 643 days of credit for the time he spent confined prior to sentencing.

Mr. House directly appealed his convictions to the CCA and raised seven claims for review. His claims centered on alleged violations of his speedy trial rights, his right to effective assistance of counsel, and a First Amendment violation. On December 7, 2023, the CCA issued a forty-two-page order rejecting all these claims. Specifically, the CCA held that (1) Mr. House's right to a speedy trial was not infringed by the discovery extension, by any extensions of the trial date, or by defense counsel's motion to evaluate Mr. House's competency; (2) the trial court correctly refused his initial requests to proceed pro se; (3) the trial court properly denied his request for advisory counsel; (4) the trial court's declaration of a mistrial did not abridge his speedy trial rights; and (5) the trial court's refusal to respond to various pro se motions Mr. House had filed while he was represented by counsel did not violate the First Amendment.

### B.    Federal Habeas Case

Mr. House filed the instant application for habeas relief on December 22, 2023.[1] The district court noted that the habeas application was "disjointed and difficult to

---

[1] Mr. House initiated his habeas case on August 14, 2023, before the CCA rendered its decision in his direct appeal. But Mr. House filed that initial habeas application under 28 U.S.C. § 2241, prompting the district court to order Mr. House to amend the application so that it was brought under § 2254, which is the proper vehicle for a prisoner in state custody to challenge a sentence's validity. Mr. House filed that

follow," but identified eight claims of constitutional error in the application that tracked

Mr. House's arguments to the CCA. *Id.* at 1. Specifically, the district court determined

Mr. House had argued that:

1.      The trial court violated his Sixth Amendment rights to effective assistance of

counsel and to a speedy trial by granting the prosecution's February 9, 2021

request to extend the expert discovery deadline.

2.      The prosecution abridged *Brady v. Maryland*, 373 U.S. 83 (1963), by calling only

one of multiple expert witnesses it had endorsed.

3.      The prosecution violated his right to a speedy trial by failing to meet its initial

expert discovery deadline.

4.      His trial counsel provided ineffective assistance and violated his speedy trial rights

by filing a "'falsified' request for a competency evaluation." *Id.* at 321.

5.      The trial court violated his rights to effective assistance of counsel and a speedy

trial by denying his request for substitute counsel.

6.      The trial court violated his right to a speedy trial by declaring a mistrial when it

could not empanel a jury because of a Covid-19 outbreak.

7.      The trial court violated his First Amendment rights by not considering motions he

had submitted pro se while he was simultaneously represented by counsel.

8.      The trial court violated his right to a speedy trial and his Sixth Amendment right to

represent himself by denying his initial requests to proceed pro se.

---

amended application under § 2254 on December 22, after the CCA had rendered its
judgment.

The district court addressed Mr. House's claims in two separate orders. On May 10, 2024, the court entered an order dismissing as procedurally barred the second claim, in which Mr. House alleged a *Brady* violation. The district court found (1) Mr. House had not exhausted this claim by raising it with the CCA; (2) Mr. House is no longer able to raise the claim in state court because a Colorado procedural rule required him to raise it in his direct appeal; (3) the claim is thus subject to an anticipatory procedural bar; and (4) Mr. House has neither shown cause and prejudice for his failure to exhaust this claim nor shown a clear miscarriage of justice. As such, the district court dismissed the second claim as procedurally barred.

On March 4, the district court issued a thirty-one-page order denying Mr. House's remaining claims. The court categorized those claims as asserting (1) violations of the right to a speedy trial; (2) ineffective assistance of counsel; (3) First Amendment violations; and (4) a claim that the district court abridged his right to proceed pro se. The court noted that the CCA had rejected these claims on the merits, and thus to obtain relief Mr. House must establish the CCA's decision either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 243 (quoting 28 U.S.C. § 2254(d)).

As explained in greater detail below, the district court found the CCA reasonably rejected Mr. House's claims, and therefore dismissed the habeas application with

prejudice. The district court also denied Mr. House leave to proceed IFP on appeal. Mr. House then timely filed the instant application for a COA.

## II.    STANDARD OF REVIEW

To obtain a COA, Mr. House must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (quoting *Miller-El. Cockrell*, 537 U.S. 322, 327 (2003)). And to the extent the district court denied his habeas application on procedural grounds, Mr. House must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although a COA applicant "is not required to prove the merits of his case, he must demonstrate 'something more than the absence of frivolity or the existence of mere good faith.'" *Silva*, 430 F.3d at 1100 (quoting *Miller-El*, 537 U.S. at 338).

In concluding whether reasonable jurists could find the district court's decision debatable, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012). As the district court correctly notes, to receive habeas relief, Mr. House must demonstrate that the CCA's denial of his direct appeal either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

10

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.    DISCUSSION

Mr. House has not shown that reasonable jurists could disagree with the district court's conclusion that the CCA reasonably rejected his constitutional claims. In his brief in support of a COA, Mr. House mainly advances conclusory statements, rhetorical questions, and the same arguments he made before the CCA and the district court without explaining how either court's analysis is flawed. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (rejecting arguments that consisted "of mere conclusory allegations with no citations to the record or any legal authority for support"). But even construing Mr. House's brief liberally,[2] we conclude that reasonable jurists could not debate the correctness of the district court's denial of his (1) speedy trial claims, (2) ineffective assistance of counsel claims, or (3) First Amendment and pro se rights claims. We also reject Mr. House's baseless claim that the district court was biased against him.

## A.    *Speedy Trial Claims*

Mr. House has not shown that it is reasonably debatable whether his constitutional right to a speedy trial was abridged. In considering this claim, the district court weighed the four factors set forth *Barker v. Wingo*, 407 U.S. 514 (1972): (1) the length of the delay, (2) the reasons for the delay, (3) whether he timely asserted his speedy trial rights,

---

[2] "Because [Mr. House] is pro se, we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

and (4) whether any delays caused prejudice. The court found that: (1) it took twenty-one months to bring Mr. House's case to trial, which weighed in favor of a speedy trial violation because a delay of more than a year is presumptively prejudicial; (2) the reasons for the delay weighed against Mr. House because the prosecution's failure to meet its initial discovery deadline was not motivated by bad faith, and Mr. House himself caused delays by requesting new counsel and erratically asking to proceed pro se; (3) Mr. House consistently asserted his speedy trial rights throughout the case, weighing in his favor; and (4) Mr. House's ability to mount a defense was not prejudiced by the twenty-one-month delay, and this failure to show prejudice weighed heavily against him. Weighing all factors, the district court found the CCA reasonably determined that Mr. House's constitutional right to a speedy trial was not abridged.

Mr. House argues the district court erroneously ruled that he was not prejudiced by the twenty-one-month delay in bringing his case to trial because, while awaiting trial, "he was assaulted by deputies twice during the week before trial," "falsely charged criminally with assault on a deputy," "removed from population for months," had his "phone privileges [] taken away," subjected to "repeated unnecessary shakedowns," and "deprived of his mental and physical safety by staff." Appellant's Br. at 11–12. These injuries, he argues, would not have occurred but for his prolonged pretrial detention. Mr. House asserts he can prove that he suffered these injuries by producing administrative "grievances filed [at the] Arapahoe County detention facility" and through testimony from "impartial co-workers of [the] deputies" who assaulted him. *Id.* at 12.

12

Mr. House presented this same argument to the district court, and the district court addressed it. When considering whether a delayed trial has caused prejudice, the court explained, the most important form of prejudice to a defendant "is the impairment of the defense." ROA Vol. IV at 257 (citing *Barker*, 407 U.S. at 532). And when a defendant argues only that he or she was prejudiced due to "prolonged pretrial incarceration," that defendant must "show some special harm suffered which distinguishes his case." *Id.* at 258 (quoting *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015)). Based on those legal standards, the court found Mr. House's bare allegations that "he was assaulted by officers" and "harassed" do not establish "that he was subjected to harsher conditions than other detainees." *Id.* And the court noted that Mr. House received 643 days of presentence confinement credit for the time he spent in detention, which mitigates "the impact of his confinement." *Id.* at 259.

The district court correctly found that the mere existence of prolonged pretrial detention—and the hardships that commonly accompany such detention—does not establish prejudice in the speedy trial context. Mr. House must demonstrate prejudice: the absence of "prejudice will eviscerate the [his] claim." *United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014). To establish prejudice, Mr. House must show the twenty-one-month delay implicates "interests that the speedy trial right protects: (i) preventing oppressive pretrial incarceration; (ii) minimizing [his] anxiety and concern; and (iii) minimizing the possibility of impairing the defense." *United States v. Garcia*, 59 F.4th 1059, 1069 (10th Cir. 2023). Of these factors, impairment to the defense "is the most serious because the inability of a defendant to adequately prepare his case skews the

fairness of the entire system." *Id.* (quotation marks omitted). And "pretrial detainment alone (that is not presumptively extreme) is insufficient proof of prejudice." *Id.* at 1071.

Here, Mr. House claims he suffered oppressive pretrial detention because prison guards "assaulted" him, isolated him from the general population, revoked his phone privileges, and generally harassed him and impaired his "mental and physical safety." Appellant's Br. at 11–12. But merely "[a]nnouncing that pretrial incarceration is oppressive does not make it so." *United States v. Landa-Arevalo*, 104 F.4th 1246, 1257 (10th Cir. 2024). Mr. House alleges that officers twice "assaulted" him while he was in pretrial detention, but he provides no information or evidence about the circumstances surrounding these alleged assaults. And to the extent Mr. House asserts he can prove these assaults took place using direct testimony and administrative grievances he filed while in pretrial detention, he did not mention this purported evidence of oppressive pretrial detention in his direct appeal to the CCA, nor even argue in that forum that he was assaulted in pretrial detention. Mr. House cannot establish prejudice in this forum by relying on evidence that he did not raise in his direct appeal: "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000); *see also* 28 U.S.C. § 2254(e)(2)(ii) (stating that when a habeas applicant "has failed to develop the factual basis of a claim in State court proceedings," new evidence cannot be admitted unless it "could not have been previously discovered through the exercise of due diligence").

Altogether, Mr. House's unsupported claims of oppressive pretrial detention cannot constitute "a particularized showing of prejudice." *Landa-Arevalo*, 104 F.4th at 1257. Additionally, as the district court held, Mr. House received credit for his pretrial detention at sentencing, which "mitigate[es] the potential oppressive effects of incarceration." *Garcia*, 59 F.4th at 1071. And while Mr. House asserts that he was prejudiced by the allegedly ineffective representation of his counsel, "[e]ffectiveness of defense counsel's representation has no bearing on this analysis." *United States v. Lewis*, 116 F.4th 1144, 1168 (10th Cir. 2024).

In sum, Mr. House has not shown that he was prejudiced by the twenty-one-month delay in bringing his case to trial. Absent any showing of prejudice, it is not reasonably debatable that the district court correctly rejected this claim.

### B.    Ineffective Assistance Claims

Mr. House has not shown that jurists of reason could debate whether the CCA reasonably determined that he received constitutionally effective assistance of counsel. In considering this claim, the district court considered whether there was "any reasonable argument" that Mr. House's appointed counsel effectively represented him under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). ROA Vol. IV at 261–62 (quoting *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019)). The court found Mr. House had not shown his counsel's performance was objectively unreasonable because (1) the trial court's decision to grant the prosecution a continuance for purposes of discovery is irrelevant to defense counsel's representation, *id.* at 262–63; (2) defense counsel did not provide ineffective assistance merely by requesting a continuance to

adequately prepare for trial, *id.* at 263–64; (3) defense counsel had an ethical duty—and thus was not ineffective—to ask the district court to evaluate Mr. House's competency before proceeding to trial, *id.* at 264–65; and (4) the trial court's denials of Mr. House's initial requests to proceed pro se are irrelevant to whether his counsel's performance was objectively reasonable, *id.* at 265–66. Therefore, the trial court found the CCA reasonably decided that Mr. House had not shown he received constitutionally ineffective assistance of counsel.

In his brief supporting a COA, Mr. House does not engage with the district court's analysis. Instead, he claims that defense counsel was ineffective by not seeking sanctions against the prosecution for failing to meet the discovery deadline on February 9. Mr. House asserts that the trial court's extension of that discovery deadline was caused by ineffective assistance, as well as the trial court's extension of the initial trial date in response to defense counsel's request for extra time to prepare due to the late-disclosed discovery. And he argues defense counsel's motion to evaluate his competency was evidently "falsified" because he was thereafter deemed competent for trial. Appellant's Br. at 8; *see also id.* at 9 (arguing no evidence shows "that defense counsel was requesting a competency [evaluation] in good faith").

Mr. House's application does not engage with the district court's analysis, and therefore does nothing to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims." *Silva*, 430 F.3d at 1100. Here, the CCA rejected the ineffective assistance claims on the merits, rendering our review "doubly deferential" in that we defer both to the CCA's "determination that counsel's

16

performance was not deficient" *and* "to the attorney's decision in how to best represent a client." *Harmon*, 936 F.3d at 1058 (quotation marks omitted). By failing to explain why the CCA and district court erroneously rejected his claims of ineffective assistance, Mr. House's claims do not meet this heightened deferential standard.

Further, on their merits, Mr. House's assertions of ineffective assistance "are conclusory and are also contradicted by the record." *United States v. Snisky*, 725 F. App'x 666, 671 (10th Cir. 2018) (unpublished).[3] The mere fact that the prosecution requested an extension of the expert discovery deadline is irrelevant to defense counsel's representation, just as the trial court's decision to grant that extension—over defense counsel's objection—does not reflect on defense counsel's representation. Mr. House cites no authority indicating that his counsel had a professional duty to seek sanctions against the prosecution for requesting an extension of a discovery deadline. Nor is it apparent that defense counsel provided constitutionally defective assistance by (1) asking the trial court to reset the trial date to allow sufficient time for counsel to review the tardily disclosed discovery, or (2) asking the trial court to evaluate whether Mr. House was competent to stand trial. As the CCA explained, under Colorado law "[i]t is not only *the duty of defense counsel* and the prosecution, but also the obligation of the court, to raise the issue of the competency of the accused to stand trial when facts dictate that such a hearing should be held." ROA Vol. I at 259 (quoting *Parks v. Denver Dist. Ct.*, 503 P.2d 1029, 1032 (Colo. 1972)).

---

[3] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

Accordingly, Mr. House has not shown that the district court's denial of his ineffective assistance claims is reasonably debatable.

### C.    First Amendment and Self-Representation Claims

Mr. House similarly has not shown that jurists of reason could debate the district court's rejection of his First Amendment and right-to-self-representation claims. The district court found Mr. House had not cited any caselaw showing that the First Amendment obligated the trial court to consider pro se motions filed while he was represented by counsel. And absent any such caselaw, the CCA reasonably rejected Mr. House's claim. The district court also ruled that the CCA reasonably determined "the trial court had 'valid reasons to doubt' that [Mr. House's] first three requests to proceed pro se 'were made unequivocally and knowingly.'" *Id.* at 267–68 (quoting ROA Vol. I at 272).

Mr. House reasserts both claims in his application for a COA, but he does not explain where the CCA or district court went wrong. He asserts that by not considering various pro se motions he submitted while he was counseled, the trial court violated the First Amendment by denying his "right to petition the government for redress of his grievances [against] defense counsel[]." Appellant's Br. at 17–18. And he urges that the trial court violated his "right to self-representation" by denying him leave to proceed pro se on August 20, 2021, by which point he had "validly waived his right to counsel." *Id.* at 12–13. Neither argument shows that reasonable jurists could debate the district court's conclusions.

18

First, the district court correctly noted that Mr. House cites no authority from the Supreme Court showing the trial court was required to consider pro se motions submitted by a counseled defendant.[4] And contrary to Mr. House's argument, Tenth Circuit and Colorado caselaw shows that "[w]hen individual parties have the assistance of counsel, courts need not consider any filings made pro se." *Bunn v. Perdue*, 966 F.3d 1094, 1098 (10th Cir. 2020) (internal quotation marks omitted); *People v. Gess*, 250 P.3d 734, 737 (Colo. Ct. App. 2010) (noting that a trial court "may ignore" pro se motions "filed by a represented defendant"). Thus, our precedent precludes Mr. House's argument that the trial court violated the First Amendment by not ruling on any pro se motions filed while he was represented by counsel. *See* 28 U.S.C. § 2254(d)(1) (requiring a habeas applicant asserting that a state court violated constitutional law to show the court violated "clearly established Federal law, as determined by the Supreme Court of the United States").

Second, as detailed above, the record shows that the trial court diligently fulfilled its duty to ensure that Mr. House's requests to proceed pro se were knowing, intelligent, and voluntary. *See United States v. Hamett*, 961 F.3d 1249, 1255 (10th Cir. 2022) (explaining that trial courts have a responsibility to "assess whether a waiver is being made knowingly and intelligently"). The trial court spoke with Mr. House at length about the difficulties attendant to proceeding pro se, and on August 19, 2021, attempted to

---

[4] In the context of this First Amendment argument, Mr. House cites *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002), which does not involve pro se parties or any judicial duty to consider pro se motions; *Betschart v. Oregon*, 103 F.4th 607 (9th Cir. 2024), which does not discuss the First Amendment or any duty to consider pro se motions; and *United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018), which does not discuss the First Amendment.

locate an attorney who could adequately represent Mr. House at his September 14 trial date. And on August 20, the trial court was prepared to allow Mr. House to proceed pro se, until Mr. House told the court that he was being "pressured" into relinquishing his right to counsel in order "to preserve his speedy trial right." ROA Vol. I at 268. Where Mr. House expressly told the trial court he was being "pressured" to proceed pro se, the trial court had good reason to deny his August 20, 2021 request because his waiver of counsel was involuntary.

Accordingly, Mr. House has not shown the district court's rejection of his First Amendment and self-representation claims is reasonably debatable.

### D.    Brady Claim

In his brief, Mr. House reasserts his claim that the prosecution committed a *Brady* violation through its late disclosure of experts and by calling only one of its disclosed experts at trial. The district court rejected this claim because Mr. House did not exhaust it with the CCA and Colorado's procedural rules required him to present it in his direct appeal. As a result, the claim is now subject to an anticipatory procedural bar under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Mr. House does not dispute the district court's procedural ruling, nor does he argue that any exceptions to AEDPA's exhaustion requirement are applicable. Accordingly, it is not reasonably debatable "whether the district court was correct in its procedural ruling," *Slack*, 529 U.S. at 484, and we deny a COA on this issue.

20

### E.     Claim of Bias

In his application, Mr. House argues the district "court handled his case with bias and prejudice" by failing to "consider any of his exhibits that proved the lower courts and professional parties did not comply with constitutional law." Appellant's Br. at 1. He also avers that because the district court judge was at one time "a pro bono lawyer for 'survivors of domestic violence,'" the court's decision was borne out of "its personal bias against" him. *Id.* at 6. More broadly, he argues every court that has considered his case thus far—the trial court, the CCA, and the district court—all "committed fraud and perjury" and "disparaged, abridged, [and] deprived" him of his constitutional rights. *Id.* at 19–20.

Mr. House's claim of bias lacks merit. He does not specify which exhibits the district court failed to consider, nor explain how any such exhibits could cause reasonable jurists to question the district court's conclusions. Without substantiating his bald assertion that the district court failed "consider any of his exhibits," *id.* at 1, Mr. House cannot demonstrate that the district court failed to consider any portion of his habeas application. *See* Fed. R. App. P. 28(a)(6) (requiring that arguments on appeal be supported by "citations to the authorities and parts of the record on which the appellant relies"). Nor does Mr. House point to anything in the record indicating that the district court rejected his habeas arguments for improper reasons. To the contrary, as outlined above, the district court carefully considered Mr. House's habeas application, analyzed his arguments under appropriate legal standards, and thoroughly explained its conclusions. In short, we reject Mr. House's argument of bias, which is nothing "more

21

than [an] attempt to impugn (without basis) the integrity of the district judge." *Garrett*, 425 F.3d at 841.

### F.    Additional Motions

Last, we address Mr. House's motion to proceed IFP, motion for discovery, and motion for a transfer. As detailed above, Mr. House has not presented "a reasoned, nonfrivolous argument" that a COA should be granted. *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (quotation marks omitted). Accordingly, we deny his request to proceed IFP. *See id.*

In his motion requesting discovery from the Arapahoe County Public Defender's Office, Mr. House seeks a memorandum in which his public defender asked a state prosecutor to agree to a "favorable" disposition to the case. Mot. Discovery at 1–2, ECF No. 14. But Mr. House "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To obtain discovery, Mr. House must show there was "good cause" for the district court to exercise its discretion to order discovery. *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999). To the extent Mr. House asks this court to order discovery, "we are a court of review, not first view," and we will not order discovery in the first instance. *Chegup v. Ute Indian Tribe*, 28 F.4th 1051 (10th Cir. 2022) (quotation marks omitted). To the extent he argues the district court abused its discretion by not ordering this discovery, Mr. House has not shown that he requested this discovery from the district court or attempted to establish good cause in that forum. *See Mann v. United States*, 204 F.3d 1012, 1017 (10th Cir. 2000) ("Issues and arguments

22

which are not raised below will not ordinarily be considered on appeal."). We therefore deny Mr. House's motion for discovery.

In his motion for a transfer, Mr. House states that he fears for his safety in the facility in which he is currently incarcerated, because prison officials have allowed narcotics to be smuggled into the facility and are "putting the whole population at risk." *See* Mot. Transfer at 2, ECF No. 15. Mr. House thus requests "immediate bail or transfer pending" our decision in this matter. Because we deny Mr. House's application for a COA, we also deny his motion for a transfer pending our decision as moot.

## IV.   CONCLUSION

For the reasons above, we DENY Mr. House's application for a COA, DENY his motion to proceed IFP, DENY his motion for discovery, DENY his transfer motion as moot, and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge